UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRANSQUAY LIMITED PARTNERSHIP,                    :
                                                  :
                     Plaintiff,                   :
                                                  :          07 CV 11130 (CM)
          - against -                             :          ECF CASE
                                                  :
GLOBAL MARITIME NAVIGATION LTD.,                  :
a.k.a. GLOBAL MARITIME NAVIGATION OOD,:
a.k.a. GLOBAL MERITAYM NEVIGEYSHAN,               :
a.k.a. NOVAIDEYA-2004, KREMIKOVTZI                :
A.D. a.k.a. KREMIKOVTZI CORP. a.k.a.              :
KREMIKOVTSI, KREMIKOVTZI TRADE                    :
E.O.O.D. a.k.a. KREMIKOVTZI TRADE LTD.            :
a.k.a. KREMIKOVTSI TREYD, FINMETALS               :
HOLDING A.D. a.k.a. FINMETALS HOLDING             :
EAD a.k.a. DARU METALS LTD.,                      :
GSHL BULGARIA S.A., GLOBAL STEEL                  :
HOLDINGS LTD., a.k.a. GLOBAL STEEL                :
a.k.a. GSHL, STEEL SHIPPING AND                   :
FORWARDING PLC a.k.a. STIL SHIPING END            :
FORUARDING a.k.a. SSF, and STEMCOR                :
(UK) LIMITED a.k.a. STEMCOR UK LIMITED,           :
                                                  :
                     Defendants.                  :
------------------------------------------------------------X

## VERIFIED SECOND AMENDED COMPLAINT

Plaintiff, TRANSQUAY LIMITED PARTNERSHIP ("Plaintiff"), by and through its

attorneys, Tisdale Law Offices LLC, as and for its Verified Second Amended Complaint against

the Defendants, GLOBAL MARITIME NAVIGATION LTD. a.k.a. GLOBAL MARITIME

NAVIGATION OOD a.k.a. GLOBAL MERITAYM NEVIGEYSHAN a.k.a. NOVAIDEYA-

2004 ("GMN"), KREMIKOVTZI A.D. a.k.a. KREMIKOVTZI CORP. a.k.a. KREMIKOVTSI

("K.C."), KREMIKOVTZI TRADE E.O.O.D. a.k.a. KREMIKOVTZI TRADE LTD. a.k.a.

KREMIKOVTSI TREYD ("K.T."), FINMETALS HOLDING A.D. a.k.a. FINMETALS

HOLDING EAD a.k.a. DARU METALS LTD. ("Finmetals"), GSHL BULGARIA S.A. ("GSHL

BULGARIA"), GLOBAL STEEL HOLDINGS LTD., a.k.a. GLOBAL STEEL a.k.a. GSHL

("GSHL"), STEEL SHIPPING AND FORWARDING PLC a.k.a. STIL SHIPING END

FORUARDING a.k.a. SSF ("SSF") and STEMCOR (UK) LIMITED a.k.a. STEMCOR UK

LIMITED ("STEMCOR")( collectively referred to as the "Defendants"), alleges, upon

information and belief, as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

    2.    At all material times to this action, Plaintiff was a foreign company duly

organized and operating under the laws of Liberia and was at all material times the disponent

owner of the M/V ZETLAND ( the "Vessel").

    3.    Upon information and belief and at all material times, Defendant GMN was a

foreign corporation or other business entity organized and existing under foreign law with an

office and place of business in Sofia, Bulgaria, and was the Charterer of the Vessel.

    4.    Upon information and belief, Defendant Global Maritime Navigation Ltd. is also

known as Global Maritime Navigation OOD and Global Meritaym Nevigeyshan. Upon

information and belief, Defendant Global Maritime Navigation was formerly known as

"Novaideya-2004."

    5.    Upon information and belief and at all material times, Defendant K.C. was a

foreign corporation or other business entity organized and existing under foreign law with an

office and place of business in Sofia, Bulgaria, and was the guarantor of GMN's performance

under the charter party.

    6.    Upon information and belief, Defendant Kremikovtzi Corp ("K.C.") is also

known as Kremikovtzi Corp. and Kremikovtsi.

7.    Upon information and belief and at all material times, Defendant K.T. was, and still is, a foreign corporation or other business entity, organized under, and existing by virtue of foreign law with a principal place of business at the following address:  19/B Tsar Boris, Iii Boulevard, Sofia, Bulgaria.

8.    Upon information and belief Defendant Kremikovtzi Trade Ltd. ("K.T.") is also known as Kremkovtsi Treyd and Kremikovtzi Trade E.O.O.D.

9.    Upon information and belief, Defendant Finmetals was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a principal place of business at the following address: 19/B Tsar Boris Iii Boulevard, Sofia, Bulgaria.

10.    Upon information and belief, Defendant Finmetals Holding EAD is also known as Finmetals Holding A.D. and Daru Metals Ltd.

11.    Upon information and belief, Defendant GSHL was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a principal place of business in Bulgaria.

12.    Upon information and belief, Defendant GSHL is also known as Global Steel Holdings Limited.

13.    Upon information and belief, Defendant GSHL BULGARIA was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

14.    Upon information and belief, Defendant SSF was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with

3

a principal place of business in Bulgaria at the following address: 19/B Tzar Boris III Blvd, 1612, Sofia Bulgaria.

15.    Upon information and belief, Defendant Steel Shipping and Forwarding PLC is also known as Stil Shiping End Foruarding and SSF.

16.    Upon information and belief, Defendant Stemcor was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a known address of: Stemcor UK Limited, Level 27 City Point, One Ropemaker Street, London, GB.

17.    Upon information and belief, Defendant Stemcor (UK) Limited is also known as Stemcor UK Limited.

18.    Pursuant to a fixture recap dated August 17, 2007 based on the terms of an amended Americanized Welsh Coal Charter with Riders dated August 16, 2007 (the "charter party"), the Plaintiff chartered the Vessel to GMN for the carriage of a cargo of iron ore from Brazil to Bulgaria.

19.    Pursuant to the terms of the fixture recap and a guarantee letter dated August 21, 2007, K.C. was the guarantor of the Charterers' performance under the charter party.

20.    Certain disputes arose between the parties regarding GMN and K.C.'s failure to pay demurrage due and owing to the Plaintiff under the charter party.

21.    Despite due demand, GMN and K.C. have failed to pay the demurrage due and owing to the plaintiff in breach of the charter party.

22.    Pursuant to the charter party, disputes arising thereunder with claims exceeding $100,000 are to be submitted to the High Court of Justice in England and Wales with English law to apply.

23.    Plaintiff has commenced court proceedings in accordance with the charter party.

24.    As a result of the Defendants' breaches of the charter party, the Plaintiff has suffered damages in the total principal amount of **$630,499.99** exclusive of interest, court costs and attorneys fees.

25.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following:

| | | |
|---|---|---|
| A. | Principal claim: | $630,499.99 |
| B. | Estimated interest on claims:<br>3 years at 6.5%, compounded quarterly | $134,688.64 |
| C. | Estimated attorneys' fees and court costs: | $200,000.00 |
| **Total** | | **$965,188.63** |

**DEFENDANTS' RELATIONS**

**1.    GMN and K.C.**

26.    Upon information and belief, Defendant K.C. is the guarantor of GMN's performance under the charter party and GMN is the alter ego of Defendant K.C. because K.C. dominates and disregards GMN's corporate form to the extent that K.C. is actually carrying on the business and operations of GMN as if the same were its own.

27.    Upon information and belief, Defendant GMN is a shell-corporation through which Defendant K.C. conducts its business.

28.    Upon information and belief, Defendant GMN is 100% owned by K.C.

29.    Upon information and belief, GMN and K.C. share common employees including Mr. Lazar Slanchev and/or use their names interchangeably in the industry.  Mr. Slanchev signed a letter of indemnity dated September 26, 2007 on behalf of Global Maritime Navigation Ltd. as

"managing director" of that company. However, his email address is

lazar.slanchev@kremikovtzi.com.

30.    Upon information and belief, GMN and K.C. share a registered office. GMN's

registered office is KV Botunets, Administrativna Sgrada na Kremikovtzi, 1870 Sofia. K.C. has

a registered office at KV Botunets, 1870, Sofia, Bulgaria or J.K. Botunets, 1870, Sofia, Bulgaria.

31.    Upon information and belief, Defendant GMN is an alias, or agent of Defendant

K.C. and/or K.C. is an alias, or agent of GMN.

32.    Upon information and belief, GMN has no separate, independent identity from

Defendant K.C.

33.    In the further alternative, Defendants GMN and K.C. are partners and/or are joint

venturers.

34.    In the further alternative, Defendants GMN and K.C. are affiliated companies

such that Defendant K.C. is now, or will soon be, holding assets belonging to Defendant GMN

and vice versa.

**II.    K.T. and K.C.**

35.    Upon information and belief, K.T. is the alter ego of K.C. because it dominates

and disregards K.C.'s corporate form to the extent that K.T. is actually carrying on K.C.'s

business and operations as if the same were its own.

36.    Upon information and belief, Defendant K.T. is an alias, or agent of Defendant

K.C. and/or K.C. is an alias, or agent of K.T.

37.    Upon information and belief, Defendants K.T. and K.C. share common ownership

and operation such that K.T. is 100% owned by K.C. and, as such, K.T. is a wholly owned

subsidiary of K.C.

38.     Upon information and belief, the June 30, 2007 "Review Report and Interim Consolidated Financial Statements" of K.C. (the "June 30 Report") states on page 7 that a subsidiary of K.C. is "an enterprise that is controlled by the parent company. Control is the power to govern the financial and operating policies of an enterprise so as to obtain benefits from its activities."

39.     Upon information and belief, K.T. has no separate, independent identity from Defendant K.C.

40.     In the alternative, Defendant K.T. is merely a shell-corporation through which K.C. conducts its business.

41.     In the further alternative, Defendants K.T. and K.C. are partners and/or are joint venturers.

42.     In the further alternative, Defendants K.T. and K.C. are affiliated companies such that Defendant K.C. is now, or will soon be, holding assets belonging to Defendant K.T. and vice versa.

**III.    GSHL and K.C.**

43.     Upon information and belief, GSHL is the alter ego of K.C. because it dominates and disregards K.C.'s corporate form to the extent that GSHL is actually carrying on K.C.'s business and operations as if the same were its own.

44.     Upon information and belief, Defendant GSHL is an alias, or agent of Defendant K.C. and/or K.C. is an alias, or agent of GSHL.

45.     Upon information and belief, Defendants GSHL and K.C. share common ownership and operation such that K.C. is 100% owned by GSHL.

46.     Upon information and belief, and as reported by the Sofia Echo on Sunday March 27, 2005, GSHL acquired 100% of the shares of Finmetals Holding, a 71% shareholder of K.C., in 2005.

47.     Upon information and belief, GSHL has no separate, independent identity from Defendant K.C.

    a.    GSHL and K.C. share eight (8) directors in common including: Mohan Lai Mittal, Ashok Kumar Agarwal, Pramod Mittal, Subhash Maheshwari and Vilas Jamnis.

    b.    K.C.'s new Chief Executive Officer is Vilas Jamnis, a director at GSHL and the former Director of Global Operations as GSHL.

    c.    K.C.'s Chairman of the Executive Board, P.K. Mittal, is also on the board of directors of GSHL.

    d.    GSHL is named next to Kremikovtzi on their website http://www.kremikovtzi.com and the web address lists the page as "Kremikovtzi (a GSHL Unit)."

    e.    GSHL is a very large global corporation but has no other website of its own.

    f.    GSHL is listed as the copyright name on the bottom of each page of Kremikovtzi's website.

48.     In the alternative, Defendant GSHL is merely a shell-corporation through which K.C. conducts its business.

49.     In the further alternative, Defendants GSHL and K.C. are partners and/or are joint venturers.

8

50.    In the further alternative, Defendants GSHL and K.C. are affiliated companies such that Defendant GSHL is now, or will soon be, holding assets belonging to Defendant K.C. and vice versa.

IV.    **GSHL Bulgaria, GSHL and K.C.**

51.    Upon information and belief, GSHL Bulgaria is the alter ego of GSHL and K.C. because it dominates and disregards GSHL and K.C.'s corporate form to the extent that GSHL Bulgaria is actually carrying on GSHL and K.C.'s business and operations as if the same were its own.

52.    Upon information and belief, Defendant GSHL Bulgaria is an alias, or agent of Defendants GSHL and K.C. and/or GSHL and K.C. are aliases, or agents of GSHL Bulgaria.

53.    Upon information and belief, Defendants GSHL Bulgaria, GSHL and Kremikovtzi A.D. share common ownership and operation.

    a.    Mr. Alok Gupka, the former CEO of Kremikovtzi A.D., is an agent authorized to act on behalf of GSHL Bulgaria. Upon information and belief, while he was CEO of Kremikovtzi, Mr. Gupka instructed Bank of New York to make a payment to GSHL Bulgaria's account in the amount of $1,213,989.92 on November 21, 2005.

    b.    Mr. Swapan Dev. Ghose a.k.a. Mr. Svapan Dev Gos is a manager of Kremikovtzi Trade and an employee, manager or agent authorized to act on behalf of GSHL Bulgaria, GSHL and Kremikovtzi A.D.

    c.    GSHL Bulgaria, GSHL and Kremikovtzi A.D. share a common block of phone numbers.

    d.    In the April 28, 2006 edition of the United Bulgarian Bank Weekly Bulletin, Kremikovtzi A.D. filed the following information with the bank: "Kremikovtzi A.D. is in on-going negotiations for termination by common consent of a steel products sale contract... between Kremikovtzi A.D. and GSHL Bulgaria." The article goes on to state that GSHL Bulgaria owns 100% of the shares of Finmetals Holding and over 25% of the shares of Kremikovtzi A.D.

    e.    Upon information and belief, GSHL is the 100% shareholder of Kremikovtzi A.D.

    f.    GSHL and GSHL Bulgaria share a common name and logo.

    g.    Thus, upon information and belief, GSHL Bulgaria has no separate independent identity from GSHL and vice versa.

54.    Upon information and belief, GSHL Bulgaria and GSHL use their names interchangeably.

    a.    On the Kremikovtzi webpage in an article available on 9/25/2007, it is stated that GSHL has strengthened Kremikovtzi's management board by adopting several new members bringing the total number of board members to eight. At the bottom of the page, it states that for clarifications, Mr. Swapan Dev Ghose of GSHL Bulgaria should be contacted. Mr. Ghose's contact details are listed as follows: tel: +359 2 9156 204, email: s.ghose@gshl.uk.com

    b.    GSHL Bulgaria is listed in Kremikovtzi A.D.'s Independent Auditor's Report and Consolidated Financial Statements dated December 31, 2006

as the "Subsidiary of the ultimate holding company of the Group" on pages 34 and 35. This is the exact same position that GSHL holds as Ispat Industries Limited owns GSHL and GSHL owns Kremikovtzi A.D.

    c.    The Sofia Echo published an article stating that GSHL bought out Finmetals to obtain a majority share of Kremikovtzi as Finmetals was formerly the 71% shareholder of Kremikovtzi A.D. *See Forbes' Top Ranker Buys Kremikovtzi, The Sofia Echo, March 27, 2005,* available online at: http://www.sofiaecho.com

    d.    However, a May 8, 2006 Sofia Echo article, GSHL Bulgaria, not GSHL, is referred to as Kremikovtzi's new owner.

    e.    The "June 30 Report" on Kremikovtzi A.D. refers to GSHL Bulgaria S.A. as GSHL and uses the names of these entities interchangeably on page 20.

55.    Upon information and belief, GSHL, GSHL Bulgaria and Kremikovtzi A.D. share a block of phone numbers. Specifically, these entities are known to have the following numbers:

    a.    Kremikovtzi A.D. +359 2 9156 200, +359 2 9156 225

    b.    GSHL Bulgaria S.A.: +359 2 9156 204, +359 2 9156 208, +359 2 9156 221

    c.    GSHL: +359 2 9156 204

56.    In the alternative, Defendant GSHL Bulgaria is merely a shell-corporation through which GSHL conducts its business.

57.    In the further alternative, Defendants GSHL Bulgaria and GSHL are partners and/or are joint venturers.

58.    In the further alternative, Defendants GSHL Bulgaria and GSHL are affiliated companies such that Defendant GSHL Bulgaria is now, or will soon be, holding assets belonging to Defendant GSHL and vice versa.

### V.    SSF, Finmetals and K.T.

59.    Upon information and belief, SSF is the alter ego of Finmetals and K.T. because it dominates and disregards SSF's corporate form to the extent that Finmetals and K.T. are actually carrying on SSF's business and operations as if the same were its own.

60.    Upon information and belief, Defendant SSF is an alias, or agent of Defendants Finmetals and K.T. and/or Finmetals and K.T. are aliases, or agents of SSF.

61.    Upon information and belief, Defendants SSF and Finmetals share common ownership and operation such that SSF is 100% owned by Finmetals, who is, upon information and belief, 100% owned by GSHL.

62.    Further, upon information and belief, Finmetals and SSF have common directors, officers and employees, including Mr. Valentin Kirilov Zahariev, Chairman of the Executive Board of SSF.  Mr. Zahariev is also named online as the person behind the 2005 sale of Finmetals to GSHL.

63.    Upon information and belief, SSF, Finmetals and K.C. share an office at 19B, Tzar Boris III blvd., Sofia, and SSF and K.T. share the same fax number of +359 2/051 6793.

64.    In the alternative, Defendant SSF is the paying agent of Defendants K.T. and/or Finmetals.

65.    In the alternative, Defendant SSF is merely a shell-corporation through which K.T. conducts its business.

66.    In the further alternative, Defendants SSF and K.T. are partners and/or are joint venturers.

67.    In the further alternative, Defendants SSF and K.T. are affiliated companies such that Defendant SSF is now, or will soon be, holding assets belonging to Defendant K.T. and vice versa.

**VI.    Stemcor, GMN and K.C.**

68.    Upon information and belief, GMN is the alter ego of Stemcor and K.C. because they dominate and disregard GMN's corporate form to the extent that Stemcor and K.C. are actually carrying on GMN's business and operations as if the same were their own.

69.    The Plaintiff's charter of the MV ZETLAND to GMN was guaranteed by K.C. *See Guarantee Letter dated August 21, 2007 annexed hereto as Exhibit "1."*

70.    Furthermore, upon information and belief, GMN is 100% owned by K.C. *See email from Bulfracht Shipbrokers dated August 14, 2007 12:25pm annexed hereto as Exhibit "2"* stating in pertinent part that "gmn – as a company Regis in sofia – 100pct owned by kremi."

71.    Upon information and belief and based upon the fixture recap and underlying charter party, Stemcor had no formal relationship to the charter of this Vessel.

72.    Upon further information and belief and based upon the information contained in the bills of lading, Stemcor had no connection to the load or discharge ports, and was not the shipper or consignee of the cargo in the Bills of Lading.

73.    Upon information and belief, Stemcor dominated and controlled GMN's interest in the fixture of the MV Zetland as the fixture was subject to Stemcor's confirmation and approval. *See August 14, 2007 8:12pm email from Bulfracht Shipbrokers annexed hereto as Exhibit "3"* stating "stem/shippers/rcvrs approval within 15th aug 18:00 hrs Sofia time."

74.     Furthermore, and upon information and belief, Stemcor required, because of its control over the charter, that its agent, "G&M-5 Ltd.", act as agents and brokers for GMN in this charter. *See August 14, 2007 12:25pm email from Bulfracht Shipowners annexed hereto as Exhibit "2"* stating in pertinent part that "i already hv stem cfm fm CVRD for dates and size of 120k, financing will be done by stemcore uk – ths why need gm5 as agents at bourgas."

75.     Moreover, upon information and belief, Stemcor UK was responsible for the financing of this fixture between Transquay and GMN. *See August 14, 2007 12:25pm email from Bulfracht Shipowners annexed hereto as Exhibit "2"* stating in pertinent part that "i already hv stem cfm fm CVRD for dates and size of 120k, financing will be done by stemcore uk – ths why need gm5 as agents at bourgas." It is of interest that Stemcor UK, not Stemcor's financing arm, Stemcor Trade Finance Limited, was responsible for the financing of the fixture of the MV Zetland.

76.     Further, upon information and belief, Stemcor and K.C. have a common director or officer, Mr. Ralph Oppenheimer, who is the beneficial owner of Stemcor and is also on the K.C. supervisory board.

77.     Furthermore, and despite the fact that Stemcor had no known connection to the fixture of this Vessel, Stemcor made a US$7,500,000.00 freight payment on behalf of GMN to non-party Zodiac Maritime Agencies, Transquay's agent. *See freight payment for the MV Zetland dated January 17, 2008 annexed hereto as Exhibit "4."* The only payment Plaintiff or its agent received under this charter was from Stemcor.

78.     It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter party contract.

14

79.    In an attempt to explain the freight payment annexed hereto as Exhibit "4," Stemcor's counsel, while copying Stemcor's in-house counsel states in an email dated January 31, 2008 that the payment was to settle "a debt it owed to Kremikovtzi by making a payment to a company called Zodiac Maritime Agencies at Kremikovtzi's instructions." *See Email dated January 31, 2008 annexed hereto as Exhibit "5"*.

80.    However, pursuant to the charter, this payment was a debt of GMN's not K.C., as GMN was the charterer of the Vessel in this fixture and was referenced on the payment.

81.    As such, upon information and belief, Defendant Stemcor acts as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant GMN, and/or receive payments being made to Defendant GMN.

82.    In addition or in the alternative, Defendant GMN uses Defendant Stemcor as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

83.    Upon information and belief, Defendant GMN is a shell-corporation through which Defendants Stemcor and K.C. conduct their business.

84.    Upon information and belief, Defendant GMN has no separate, independent identity from Defendants Stemcor and K.C.

85.    In the further alternative, Defendants Stemcor, K.C. and GMN are partners and/or are joint venturers.

86.    In the further alternative, Defendants Stemcor, K.C. and GMN are affiliated companies such that Defendant Stemcor and K.C. are now, or will soon be, holding assets belonging to Defendant GMN and vice versa.

87.     The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendants.

88.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendants held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendants, citing it to appear and answer under oath all and singular the matters alleged in the Verified Second Amended Complaint, failing which  default judgment be entered against it in the sum of **$965,188.63**.

B.     That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$965,188.63** belonging to, due or being transferred to, from, or for the benefit of the Defendants, including but not limited to such property as may be held, received or transferred in Defendants' name(s) or as may be held,

received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Second Amended Complaint;

      C.     That pursuant to N.Y. CPLR Article 53, *et seq.* this Court recognize and confirm any final judgment from the English Court in Plaintiff's favor against the Defendants as a judgment of this Court;

      D.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

      E.     That the Plaintiff have such other, further and different relief as the Court deems just, proper and equitable.

Dated: February 1, 2008
       New York, NY

                    The Plaintiff,
                    TRANSQUAY LIMITED PARTNERSHIP,

                    By: _____
                      Lauren C. Davies (LD 1980)
                      Thomas L. Tisdale (TT 5263)
                      TISDALE LAW OFFICES LLC
                      11 West 42nd Street, Suite 900
                      New York, NY 10036
                      (212) 354-0025 – phone
                      (212) 869-0067 – fax
                      ldavies@tisdale-law.com
                      ttisdale@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )    ss.:    City of Southport
County of Fairfield   )

1.    My name is Lauren C. Davies.

2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.    I am an Associate in the firm of Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4.    I have read the foregoing Verified Second Amended Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated: February 1, 2008
       New York, NY

_____
Lauren C. Davies

# EXHIBIT 1

КРЕМИКОВЦИ АД
пощенски код 1870 София

Регистрационен индекс и дата

№ №: 4006. 585 /22.08 ⁿⁿᵒ 2г.

**KREMIKOVTZI** AD

Botunetz Qrt.; 1870 Sofia; tel: (02) 935 22 11; fax: (02) 935 35 76

# GUARANTEE LETTER

By the parent Company "KREMIKOVTZI AD" of Sofia

21 August, 2007

To:     ZODIAC MARITIME AGENCIES LIMITED
        on behalf of 'Transquay Limited Partnership'

Dear Sirs,

SUBJECT:    MV Zetland cp dated 16 August, 2007
            Global Maritime Navigation Ltd., Sofia

We, KREMIKOVTZI AD hereby, guarantee the full and complete performance, execution and fulfilment of charterers obligations under the said charter party 'ZETLAND' dated 16 August, 2007 and the payments of all amounts due to you thereunder.

Authorised signatory with the authority of KREMIKOVTZI AD:

Alexander Tomov
Senior Executive Director

# EXHIBIT 2

## Damian Bojkov

**From:**     Bulfracht Shipbrokers Ltd., Sofia [shipbrokers@bulfracht.com]
**Sent:**     Tuesday, August 14, 2007 12:25 PM
**To:**       bojkov (bojkov)
**Subject:** brasil/bourgas iron ore

FROM : BULFRACHT SHIPBROKERS LTD, SOFIA, ph+35929549815, www.bulfracht.com

skype G.TRENEV ,mobile:+359888632750

GDY

Db/gt

tks ows offer wch chrs decline and bid firm for rply 1hrs as fllws:

all terms, conditions and negos n eventual fix to remain strictly P N C
fllwng bid is made in accordance with english law

ows -pls adv full style for record

ows to advise chrs required information on fixng m/t

- p and i club:
- vsls class:
- vsl's present position/schedule/eta bss guaiba island:
- last port of discharge:
- imo register number:
- last 3 cargoes:
- type of hatch covers:
- hold/hatch dims:
- hold dimension
- since when the vessel is under present ownersship:
- bank accnt where frt to be remitted including beneficiary name:

ows cfm:
- ows/master cfm no liens/arrest orders/encumbrances/
  recommendations are pending
- vsl is in possesion of all certificates valid for intended ports of
  call and for the duration of this cp
- ows to provide foll certificates upon lifting subs:

1/29/2008

- p&i club entry certificate
- h&m certificate


- FOR A/C OF GLOBAL MARITIME NAVIGATION LTD, SOFIA
---

- cgo qty - 120,000mts 10pct moloo bulk iron ore
            chopt
            130,000mts 10pct moloo bulk iron ore
- loadport - 1sb guaiba island
- dischport - 1sa+1sb bourgas where chrs gtee min 36' bw available
            at berth
- lighterage at bourgas roads down to 36' bw dft for chrs' a/c /time /risk
- ows to adv qtty necessary to be lightened at bourgas to reach 36'bw at berth
- owr to satisfy themselves for restrictions at loadport
- laycan 03-10 sept
- loadrate - scale load (65hrs shinc for first 60,000mt + 1 hour
            extra for each 6,000mt loaded)
- dischrate - 10,000mts at lighterage / 12,000mts at berth pwwd of 24 cons hrs
shinc
- frt usd 52.00pmts fiost bss 1/1 - 120,000mts 10pct moloo
      usd 51.00pmts fiost bss 1/1 - 130,000mts 10pct moloo
- frt paymnt - 100pct payble w/i 7 b/d aft s/r bs/l marked 'frt payble as per c/p'
            but in any case 'bbb'. chrs addrs comm is to be paid to with frt n
            same to be returned to chrs after ows hv rcvd 100pct of the frt.
- frt deemed earned on shipment and is discountless vaocionl
- dem usd 80,000pdpr / dhdwtsbe
- agreed balance demurrage/despatch for load/dischports is payable w/i 20days

 of completion discharge and recvng ows final frt statmnt together with all
supportng dox
- 12 hrs tt usc bends
- in case original bs/l not available upon vsls arrival in bourgas, chrs agree to
disch vsl against
   L.O.I - ows p n i club wording signed by chrs / recvrs only.
- chabe:
   at Guaiba Island - brazshipping
   at bourgas - gm&5
- if vsl over 18yrs of age cvrd inspection and dpc certificate at owrs' risk
- brazilian p.u.t. and mmrt taxes to be for shippers acct.
- o/w mv maple valley c/p with 2.5pct adr comm ttl here
- sub chrs recfm w/i 24hrs aft fix clean
-end bid-
- tell damlan tht:
- gmn - as a company regis in sofia - 100pct owned by kremi

1/29/2008

- in next counter if ows insist will cfm kreml to gtee
- i already hv stem cfm fm CVRD for dates and size of 120k, financing will be done by stemcore uk – ths why need gm5
as agents at bourgas
- in any case can not do less than 24 hrs aft fix m/t

rgrds


Brgds

George Trenev


No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.11.13/946 - Release Date: 10/08/2007 15:50

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.11.17/951 - Release Date: 13/08/2007 10:15

1/29/2008

# EXHIBIT 3

**Damian Bojkov**

| | |
|---|---|
| **From:** | Bulfracht Shipbrokers Ltd., Sofia [shipbrokers@bulfracht.com] |
| **Sent:** | Tuesday, August 14, 2007 8:12 PM |
| **To:** | bojkov (bojkov) |
| **Subject:** | FW: zetland ** MSG#:<2315100> |

**Attachments:** 20070814174142277.tif



200708141741
277.tif (423 KB)

FROM : BULFRACHT SHIPBROKERS LTD, SOFIA, ph+35929549815, www.bulfracht.com

skype G.TRENEV ,mobile:+359888632750

GDY

DB/GT


DRAFT RECAP MV 'ZETLAND'/GLOBAL MARINE NAVIGATION LTD, SOFIA
--
Acct Global Maritime Navigation Ltd, Sofia

firm for reply within 14.00 hrs ldn tdy


stem/shippers/rcvrs approval within 15th aug 18:00 hrs Sofia time sub chrrs
reconfirmation decl latest 14:00 sofia time


Acct global maritime - pls advise chrts full style/ address by return,
subject to owners approval of chrts

messrs Kremikovtzi guarantee the performance and due fulfilment of charter party


M/V ZETLAND

Type: BULKCARRIER
Built: 1985
Flag: BERMUDA
145905.00 MTDWT on 17.48 M SSW
104.200 MT per CM Immersion
LOA 267.32 M / Beam 42.97 M
9 holds, 9 hatches
Dimensions:

| | Cubic Grain (M3) | Hatch Cover (M) |
|---|---|---|
| Hold 1 | - 15192.90 | 12.80-20.00 |
| Hold 2 | - 19524.50 | 13.60-20.00 |
| Hold 3 | - 18070.90 | 13.60-20.00 |
| Hold 4 | - 19220.70 | 13.60-20.00 |
| Hold 5 | - 18099.20 | 13.60-20.00 |
| Hold 6 | - 19220.70 | 13.60-20.00 |
| Hold 7 | - 18317.00 | 13.60-20.00 |
| Hold 8 | - 19510.80 | 13.60-20.00 |
| Hold 9 | - 16802.90 | 13.60-20.00 |
| Total | -   163959.60 | |

DISTANCES FROM WATER LINE TO TOP OF HARCH COAMINGS BASIS BOURGAS ROADS :

WOG AND WITHOUT GUARANTEE - TO BE RECONFIRMED BY MASTER

BASIS 143000 MTNS OF CARGO    -    9.45 MTRS

132000                         10.5 MTRS

103000                         13.3 MTRS

92000                          14.4 MTRS

AS PER OWNERS CALCULATIONS AND AGAIN WOG VSL WILL HV TO DISCHARGE ABT 66000 MTNS OF
CARGO FROM THE MAX - 143000 MTNS TO REACH THE DRAFT AT BOURGAS OF 36 ' BW.

+ + + all details about + + +

Owners Transquay Limited Partnership c/o Zodiac Maritime Agencies ltd London

- p and i club: the london steamship.
- vsls class: Lloyds
- vsl's present position/schedule/eta bss guaiba island:
- last port of discharge: sailed Baoshan 29 July 2007
- imo register number: 8412649
- last 3 cargoes: last sepetiba/ majishan and baoshan - iron ore, prev itaguai/
dunkirk - iron ore, prev richards bay/ taranto - coal.

- type of hatch covers: steel side rolling.
- hold/hatch dims: as above
- hold dimension as above
- since when the vessel is under present ownership: 2002
- bank accnt where frt to be remitted:

- vsls certificates as per attachment

Banking Details

Payable in USD to....

Chase New York
Swift Code: CHASUS33
For Account of: Nordea Bank, London
8th Floor, City Place House,
55 Basinghall Street,
London EC2V 5NB
Swift Code: NDEAGB2L
Account No: 400807041
Attention: PAYMENT PROCESSING

2

For the account of: Zodiac Maritime Agencies Limited Pool Account US Dollar Account No: 54111122

ows cfm:
- ows/master cfm no liens/arrest orders/encumbrances/ recommendations are pending - yes
- vsl is in possesion of all certificates valid for intended ports of call and for the duration of this cp - yes
- ows to provide foll certificates upon lifting subs:
- p&i club entry certificate - reverting
- h&m certificate - reverting


- 120,000 mt 10 pct moloo or chopt 130,000 mt 10 pct moloo. cargo size to be declared on lifting subjects.

- iron ore in bulk 1- 2 grades in chop , always within natural hold segregation , excl dri,drip concentrates.

- all cargo to be loaded stowed carried and discharged in accordance with imo recommendations.

- cargo to be loaded in all holds

- load 1 safe berth guaiba island aa

- discharge bourgas os anchorage/ lighterage area and osb aa

- laycan 3 - 10 00 september 00.01-24.00 hrs, vsl bunkered singapore 6th August, eta guaiba 4th sept pm

- load 65 hrs for 1st 60,000 mt plus one hour for each additional 6,000 mtons shinc

- discharge rate 10,000 mtns shinc pd at lighterage ,12,000 mts shinc pd at berth

- 12/12 hrs tt usc bends

- nor at bends may be tendered wipon,wibon,wipfon,wiccon

- all time from expiry of turn time or commencement of lighterage whichever

occours first, at lighterage position until completion of discharge at berth

to count as laytime or time on demurrage wp or not
- at load and discharge time used for shifting from anchorage or lighterage place to loading or discharging berth not to count as laytime.

- After lighterage, vessels draft at Bourgas to be consistent with safe navigation and not exceeding that permitted by port regulations.

- vessel to be lightered down to a draft at anchorage that will give a

minimum underkeel clearance of 10 pct of vessels draft

- freight if 120,000 mt 10 pct - usd 54.75pmt fiost

- freight if 130,000 mt 10 pct - usd 52.75 pmt fiost

- demurrage usd 90,000 hdlsbe

- 100 pct frt inc add comm to be paid 7 banking days after signing releasing bs/l or prior passing cape passero, whichever the ealier. Vessel will not pass cape passero until freight received in owners account and all time lost due to non payment or late payment of freight is to count in full as time on demurrage and to be remitted prior to vessel proceeding further on the voyage.

- chrrs address comm. To be returned to chrrs nominated bank after receipt of 100 pct of frt

3

- settlement of load port demurrage /dispatch to be effected within 7

running days of presentation of relevant documents but latest before

passing cape passero inbound.

- settlement of discharge port demurrage/dispatch within 15 days of completion of discharge.

- owners to have a lien on cargo for any money owed.

- any ap due vsl age, class or flag not for owners acct

- d/a at bourgas is 100 pct for owners account

- at Bourgas chrts guarantee that the vessel can safely; arrive, be lightered, berth, discharge and sail.

- freight deemed earned on shipment discountless nonreturnable vsl a/o cargo

lost or not lost

- in case original bs/l is not available for presentation to vessel upon arrival at discharge port, then owners to discharge against LOI in owners pandi club wording signed by chrts and countersigned by kremikovtzi as receivers.

- cvrd inspection and dpc at loadport to be owners responsibility

- brazilian FUT and mmrt taxes to be for shippers account.

- pls provide details of chrts agents in Bourgas - gm&5

- 5 pct total comm (2.5 pct address, 1.25 pct bulchem, 1.25 pct bulfracht)

- subject owners approval of chrts.

- subject all further cp details based maple valley. assume headowners are first class european owners if so pls provide copy.

- messrs kremikovtzi to fax a letter of guarantee on their headed notepaper directly to owners managers (zodiac), and to present original to owners representative office in Bourgas as per following wording:

LETTER OF GUARANTEE

Guarantee Letter by the parent company '.............................' (of where?)** ie kremikovtzi of Sofia
on their letter headed paper to read as follows

Date

To ZODIAC MARITIME AGENCIES LIMITED
on behalf of 'Transquay Limited Partnership'

Dear Sirs,

SUBJECT: MV Zetland cp dated ...... 2007
        Name of Account Vessel vessel is being chartered by and place

We, (name of Parent Company as above**), hereby, guarantee the full and complete performance, execution and fulfilment of charterers obligations under the said charter party 'name of vessel and charter party date' and the payments of all amounts due to you thereunder.

Signed

by an authorised signatory  with the authority of (name of Parent Company as above**) of ?'

4

Name of person signing
Title


End

Vij pregledai go I ako niama razlichia da go prashtame


brgds

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.11.13/946 - Release Date: 10/08/2007 15:50


No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.476 / Virus Database: 269.11.17/951 - Release Date: 13/08/2007 10:15

# EXHIBIT 4

NORDEA BANK

06/2008  14:18    02077259170                                    PAGE  01/01

Date/Time: 17JAN08 / 14:22:07 Inward SWIFT Message

System Name: ***AQUA Intercept 2.0***
Department: CUST SERVICE
Message Type: MT103
From: BPPBCHGGXXX
        BNP PARIBAS PRIVATE BANK SWITZERLAND
        GENEVA

Priority: N
Queue: Archived Processed
ISN: 651507

(Message received on on 18SEP07 at  8:32:39

1:F01NDEAGB21BXXX1436406371}{2:O1030930107091BPPBCHGGAXXX27299673807091809831
}{3:{108:GC600000114636807}{119:STP}}{4:

20:
Sender's Reference
NR0150106116X1100

23B:
Bank Operation Code
CRED

32A:
Value Date/Currency/Interbank Settled Amount
070919 USD                7,543,250.00

33B:
Currency/Instructed Amount
USD7543250,

50K:
Ordering Customer
/150106116
STEMCOR UK LIMITED
LEVEL 27 CITY POINT
ONE ROPEMAKER STREET
LONDON//GB

53A:
Sender's Correspondent
BNPAUS3N                    BANQUE NATIONALE DE PARIS    NEW YORK, NY

54A:
Receiver's Correspondent
CHASUS33                    JPMORGAN CHASE BANK          NEW YORK, NY

59:
Beneficiary Customer
/GB92NDEA40487854111122:
ZODIAC MARITIME AGENCIES
LYNTON HOUSE
7-12 TAVISTOCK SQUARE
NC1H 9TP LONDON//GB

70:
Remittance Information
VESSEL - IETLAND
REF. GLOBAL MARITIME

71A:
Details of Charges
OUR

-}{5:{CHK:D8D53D8DA0C93}{MAC:00000000}
32061F01NDEAGB21BXXX1436406637 O1030930107091BPPPB
TR0150106116X1100                                              XKZCK10IW 1
                                                    DKUHPMAN07781371071091809

# EXHIBIT 5

Stemcor; TLO ref 1790

## Lauren C. Davies

**From:**   William R. Bennett [wbennett@bgmplaw.com]
**Sent:**    Thursday, January 31, 2008 12:02 PM
**To:**      Lauren C. Davies; Thomas Tisdale
**Cc:**      Andrew Goldsmith
**Subject:** RE: Stemcor; TLO ref 1790

Tom/Lauren:

I refer to your email below.

First off, Mr. Andrew Goldsmith is in-house counsel with Stemcor UK and you are free to copy him in your emails if you wish.

Second, I advised you in writing that I am counsel for Stemcor UK, a formal appearance should, therefore, not be required for you to provide me with the information I requested. I do not know the two other firms you wrote about, but I think our professional relationship fostered over the last 15 years is stronger than most so I ask you to re-consider your position.

Lastly, as discussed with Lauren, Stemcor settled a debt that it owed to Kremikovtzi by making a payment to a company called Zodiac on Kremikovtzi's instructions. The allegations in the Amended Verified Complaint are based on erroneous assumptions and incorrect. We ask that you seriously consider advising the banks to release any funds they attached belonging to Stemcor.

Very truly yours,

William R. Bennett, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
494 8th Avenue, 7th floor
New York, New York 10001
Tel. 646.328.0120
Fax 646.328.0121

www.bgmplaw.com