William R. Bennett, III, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Defendant STEMCOR UK LIMITED
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone:   646-328-0120
Facsimile:   646-328-0121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TRANSQUAY LIMITED PARTNERSHIP,                           07 CV 11130 (CM)
                                                         ECF CASE
                Plaintiff,

    - against -

GLOBAL MARITIME NAVIGATION LTD., et, al.,

                Defendants.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE PURSUANT TO RULE E OF THE SUPPLEMENTAL RULES TO VACATE THE COURT'S ORDER GRANTING PLAINTIFF THE RIGHT TO SERVE WRITS OF ATTACHMENT AGAINST STEMCOR UK LIMITED AND DISMISSING THE ACTION AGAINST DEFENDANT STEMCOR UK LIMITED OR IN THE ALTERNATIVE ORDERING PLAINTIFF TO POST COUNTER-SECURITY IN THE AMOUNT OF $965,188.63**

                              Respectfully submitted by,


                              William R. Bennett, III  (WB-1383)
                              Bennett, Giuliano, McDonnell & Perrone, LLP
                              Attorneys for STEMCOR UK LIMITED
                              494 Eighth Avenue, 7th Floor
                              New York, New York 10001

Defendant Stemcor UK Limited ("Stemcor") respectfully submits this memorandum of law in support of its Order to Show Cause to vacate the Court's Orders of January 23, 2008 and February 1, 2008 granting plaintiff the right to serve writs of attachment against Stemcor's assets and dismissing the action as against Stemcor, or in the alternative, ordering plaintiff to post counter-security in an amount not less than $965,188.63 in Stemcor's favor.

## Preliminary Statement

This is an action involving an alleged breach of a charter party by Global Maritime Navigation Ltd. ("Global"). Transquay Limited Partnership ("Transquay") alleges that as a result of Global's breach of the charter party, Transquay has allegedly suffered damage of $630,499.99. Transquay obtained a writ of attachment against Stemcor's assets on the argument that Stemcor is an alter ego of one or more of the defendants. Transquay, thereafter, attached Stemcor's funds on at least three different occasions. The total amount attached is $965,188.63.

For the reasons stated herein below, the Court must vacate its Orders granting plaintiff the right to serve writs of attachment against Stemcor's assets and dismiss the action as against Stemcor, or in the alternative, order counter-security to be posted by Transquay for an amount not less than $965,188.63.

## The Facts

On December 10, 2007 Transquay commenced a Rule B proceeding against Global and Kremikovtzi AD ("Kremi"). On January 23, 2008, Transquay amended its Complaint and named Stemcor as a defendant; falsely, maliciously, and without an adequate investigation alleging that Stemcor was an "alter ego" of both Global and Kremi. On February 1, 2008 plaintiff amended its complaint for the second time.

Transquay cannot provide the necessary evidence to establish that Stemcor is an "alter ego," yet, alleged "upon information and belief" that Stemcor was an "alter ego" to persuade the Court to issue a writ of attachment against Stemcor. Transquay's claim arises out of a charter party entered into by and between Transquay and Global and readily admits that Stemcor was not, and is not, a party to, or guarantor of, said charter. (Second Amended Complaint ¶ 12.)

The writ of attachment obtained by Transquay is based upon the grossly misleading allegation in the Amended and Second Amended Complaint that Stemcor and Global/Kremi are related companies. One simply needs to review the websites of Stemcor and Kremikovtzi to see that Stemcor and Kremi are two large independent companies in the same trade and neither is an alter ego of the other; see www.Stemcor.com and www.Kremikovtzi.com. The two companies are transparent in their website, setting forth their respective histories and structures. Of the nearly 25 people who are directors or managers, only one person, Mr. Oppenheimer, is common to both companies.

There is no evidence that Stemcor is a parent, affiliate, subsidiary, agent, partner or joint venture of Global or Kremi. Further, Stemcor and Global/Kremi do not share office space, bank accounts, or employees. In addition, they did not participate in any partnership or joint venture relating to the charter party.

Plaintiffs rely on two facts to support its allegation that Stemcor is related to Kremi. The first being Mr. Oppenheimer's relationship with both companies. There is no evidence that Stemcor and Global/Kremi have common officers or directors. In fact, the websites note that Mr. Oppenheimer is one of nine directors of Stemcor and one of five who make up Kremi's supervisory board. Mr. Oppenheimer is not a director of Kremi or on its board of managers. A cursory review of the caselaw on "alter ego" would lead one to conclude that Mr. Oppenheimer's

3

status with the two entities would not support the allegation that Stemcor is the alter ego of Kremi.

The second fact is that Stemcor paid freight on behalf of Global/Kremi. Stemcor acts at times as a financing facility in the steel trade and all transactions between Stemcor and Global/Kremi's were done at arm's length. Transquay has the burden of proving otherwise, which it cannot.

### **Rule B and Rule E**

To begin the process by which a party may attach another party's assets, a plaintiff must file a verified complaint seeking attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. Fed.R.Civ.P. Supp. Rule B(1). Thereafter, Rule E(4)(f), Fed. R. Civ.P. Supp. Rule E, provides that any person claiming an interest in the attached property is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." *Id.* Supp. Rule E(4)(f).

Under *Agua Stoli Shipping, Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006), in a Rule E(4)(f) inquiry challenging a Rule B attachment, a plaintiff has the burden to show not only that it has met the filing and service requirements of Rules B and E, but also that: (1) it has a *prima facie* admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached defendant's property was within the district; and (4) there is no statutory or maritime law bar to the attachment. *Agua Stoli*, 460 F.3d at 445. At the Rule E(4)(f) hearing, the defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed.R.Civ.P. Supp. Rule E(4)(f), advisory committee's note.

## Piercing the corporate veil

Here, plaintiff has no *prima facie* admiralty claim against Stemcor. Transquay's counsel alleges "upon information and belief," clearly without a sufficient basis, that Global is the alter ego of Kremi and that Kremi is the alter ego of Stemcor and that Stemcor is liable for Global's debt. This "totem pole" alter ego argument highlights the ever expanding abuse of the Rule B attachment process where overzealous plaintiffs make baseless allegations in an attempt to seize assets. Transquay has no evidence within its possession which would lead one to make the allegations it made in its complaints. Simply put, Transquay cannot establish it has a *prima facie* admiralty claim against Stemcor.

When a plaintiff seeks to plead an alter ego theory, "actual domination, rather than the opportunity to exercise control, must be shown." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (quoting *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 21 (2d Cir. 1976). The Second Circuit has identified several factors that can be considered when alter ego status has been pled, to wit: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

What evidence did Transquay have which permitted its to allege "upon information and belief" that Stemcor was an alter ego of Global and/or Kremi? The answer – none. None of the ten factors that are relevant to the "alter ego" analysis have been adequately pled by Plaintiff. There has been no intermingling of funds; no overlap in ownership, officers, directors, or personnel; no sharing of common office space, address and/or telephone numbers; no payments of corporate debt by a dominating entity; and no intermingling of property between the entities. Stemcor paid freight under a financing agreement with Kremi. Stemcor simply acted as a financier. Stemcor is no different than a bank in a Rule B scenario, it may be served with a writ of attachment if it holds funds for others, however, as a financier it is not liable for the acts of Global and/or Kremi, and its assets are not attachable.

Although a minimal *prima facie* showing is sufficient to justify an attachment under Rule B, under Rule E(4)(f), Transquay has the burden of presenting evidence showing reasonable grounds for the attachment. Transquay cannot provide any evidence to support its alter ego, shell-company, partner or joint venture theories, nor can it present any evidence that Stemcor used another defendant as an alter ego to perpetrate a fraud. Chief Judge Wood found that the mere fact that entity B was the "paying agent" for entity A, and that entity B had arranged for other non-parties to pay the debts of Entity A, insufficient to uphold an alter-ego claim for Rule E(4)(f) purposes. *Tide Line Inc. v. Eastrade Commodities, Inc.*, 06 Civ. 1976 (KMW). The same scenario exists here. Accordingly, the order of attachment as against Stemcor must be vacated.

As this Court noted in *Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.* Slip Copy, 2007 WL 3255823, agreeing with Chief Judge Wood in *Tide Line*, wholly conclusory allegations in a complaint are insufficient to withstand a motion to vacate an attachment. Were a

6

plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, which is the case here, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous or non-existent. By including specific factual allegations that support "on information and belief" contentions in the complaint, the plaintiff's counsel subjects himself to Rule 11 sanctions should they prove erroneous. *Brave Bulk Transport Ltd.* 2007 WL 3255823. This is what insures the Court that when presented with an application for a Rule B attachment that it has before it is a trustworthy pleading. Here, the pleading is not sufficiently trustworthy to maintain the attachment.

If the Court believes the attachments are based on sufficient pleadings, then in the alternative, Stemcor seeks counter-security in the amount of $965,188.63 for its claim for wrongful attachment and for its costs and attorneys' fees. Stemcor concedes that its counterclaim for wrongful attachment does not arise from the same occurrence or transaction that is the subject of this action, but in the London arbitration Stemcor's attorneys' fees will be inextricably intertwined with the original transaction. Accordingly, Stemcor's request for counter-security should be granted.

### Conclusion

For the reasons set forth above, the Order of Attachment, as against Stemcor must be vacated and the causes of action against Stemcor dismissed.

Dated: New York, New York
       February 15, 2008

                                  Bennett, Giuliano, McDonnell & Perrone, LLP
                                  Attorneys for Defendant
                                  STEMCOR UK LIMITED

                                              William R. Bennett, III
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone:    (646) 328-0120

**TO:**  Thomas Tisdale, Esq.
       Tisdale & Lennon, LLC
       11 West 42nd Street, Suite 900
       New York, New York 10036

Z:\Documents\All Files\D769 Transquay\Pleadings\MOLSuppOSC-021208.doc

## CERTIFICATE OF SERVICE

I, WILLIAM R. BENNETT, III, an attorney duly admitted to practice in the Courts of the State of New York and in this District, hereby certify that on February 15, 2008, I personally caused a copy of the foregoing to be served on the following attorneys via ECF:

Thomas Tisdale, Esq.
Tisdale Law Offices
11 West 42nd Street, Suite 900
New York, New York 10036

　　　　　　　　　　　　　　　　　　　　　/s/ William R. Bennett, III
　　　　　　　　　　　　　　　　　　　　　William R. Bennett, III

Z:\Documents\All Files\D767 Fieldston School\Pleadings\CERTIFICATE OF SERVICE-ReRule7.1Stmt-020708.doc