UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRANSQUAY LIMITED PARTNERSHIP,                  :
                                                :
                    Plaintiff,                  :
                                                :        07 CV 11130 (CM)
        - against -                             :        ECF CASE
                                                :
GLOBAL MARITIME NAVIGATION LTD.,                :
a.k.a. GLOBAL MARITIME NAVIGATION OOD, :
a.k.a. GLOBAL MERITAYM NEVIGEYSHAN,             :
a.k.a. NOVAIDEYA-2004, KREMIKOVTZI              :
A.D. a.k.a. KREMIKOVTZI CORP. a.k.a.            :
KREMIKOVTSI, KREMIKOVTZI TRADE                  :
E.O.O.D. a.k.a. KREMIKOVTZI TRADE LTD.          :
a.k.a. KREMIKOVTSI TREYD, FINMETALS             :
HOLDING A.D. a.k.a. FINMETALS HOLDING           :
EAD a.k.a. DARU METALS LTD.,                    :
GSHL BULGARIA S.A., GLOBAL STEEL                :
HOLDINGS LTD., a.k.a. GLOBAL STEEL              :
a.k.a. GSHL, STEEL SHIPPING AND                 :
FORWARDING PLC a.k.a. STIL SHIPING END          :
FORUARDING a.k.a. SSF, and STEMCOR              :
(UK) LIMITED a.k.a. STEMCOR UK LIMITED, :
                                                :
                    Defendants.                 :
------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT STEMCOR'S MOTION TO VACATE

TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 (phone)
(212) 869-0067 (fax)

*Attorneys for Plaintiff*
*Transquay Limited Partnership*

Thomas L. Tisdale, Esq.
Lauren C. Davies, Esq.

## INTRODUCTION

Plaintiff, Transquay Limited Ltd. ("Transquay" or "Plaintiff"), by and through its undersigned counsel, Tisdale Law Offices, LLC, respectfully submits this memorandum of law in opposition to Stemcor (UK) Limited's ("Stemcor") motion to vacate maritime attachment. Plaintiff's attachment as against Stemcor should not be vacated because (1) Plaintiff has a maritime claim, (2) Plaintiff has adequately alleged *prima facie* alter-ego claims against Stemcor and (3) Plaintiff has satisfied the requirements of Supplemental Rule B of the Federal Rules of Civil Procedure for Certain Admiralty Claims ("Rule B") in all other respects.

Defendant Stemcor's assertions to the contrary ignore recent case law and are unavailing. In order to maintain a maritime attachment against an alter-ego of the principal defendant at a Rule (E)(4)(f) post-attachment hearing, a plaintiff need only establish that it has sufficiently alleged a *prima facie* alter ego claim. This burden is met when the plaintiff alleges the nature of its maritime claim and the basis upon which it is claiming alter-ego, e.g. fraud or domination/control. It is not necessary for a plaintiff to show "probable cause" or "reasonable grounds" to support its claim at a Rule (E)(4)(f) post-attachment hearing.

## FACTS

The facts pertaining to the instant motion to vacate the process of maritime attachment and garnishment are more fully set forth in the accompanying Affidavit of Attorney Thomas L. Tisdale dated February 22, 2008 (*"Tisdale Aff."*). The facts stated in the Affidavit are incorporated by reference herein. In addition, this memorandum of law will make reference to, and discuss as necessary, the facts set forth in the Affidavit and the Plaintiff's Verified Second

Amended Complaint, with exhibits, which is annexed thereto as Exhibit "1."

## ARGUMENT

### POINT I

### PLAINTIFF HAS SUFFICIENTLY PLED ITS ALTER-EGO ALLEGATIONS AGAINST STEMCOR

Plaintiff has adequately pled its alter-ego claim against Stemcor. In order to maintain an attachment against an alter-ego of the principal defendant at a Rule (E)(4)(f) post-attachment hearing, a plaintiff need only establish that it has sufficiently alleged a *prima facie* alter-ego claim. This burden is met when the plaintiff alleges the nature of its maritime claim and the basis upon which it is claiming alter-ego, e.g. fraud or domination/control. It is no longer necessary for a plaintiff to show probable cause or reasonable grounds to support its claim in a Rule (E)(4)(f) post-attachment hearing.

The Second Circuit Court of Appeals has recently ruled that it is improper for a court to engage in a fact intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). In addition, this Court, Chief Judge Wood and Judge Castel have all held that it is unnecessary to examine the factual underpinnings of a plaintiff's alter-ego claims in a Rule (E)(4)(f) post-attachment hearing. *See Brave Bulk Transport Ltd. v. Spot On Shipping Ltd., et al.*, 2007 U.S. Dist. LEXIS 81137 (CM); *see also Tide Line, Inc. v. Eastrade Commodities Inc. and Transclear, S.A.*, 06 Civ. 1979 (KMW), 2006 U.S. Dist. LEXIS 95870 (August 15, 2006); *see also Transcript of Rule E(4)(f) hearing dated September 29, 2006 in Route Holding Inc. and Beam Company v. IOOI and Marina World Shipping*, 06 Civ. 3428 (PKC) *annexed hereto as*

3

*Exhibit "A."* The facts presented in the *Brave Bulk, Tide Line* and *Route Holding* cases are strikingly similar to the instant matter, and their respective holdings, denying the defendants' alter-ego motions to vacate the alter-ego based allegations, decisively establish that Plaintiff has met its burden in this case. Even assuming *arguendo* that Plaintiff must make a factual showing at this stage, which is denied, Plaintiff has set forth sufficient evidence showing that Stemcor, Global Maritime Navigation Ltd. ("GMN") and Kremikovtzi are alter-egos of each other.

Nowhere in its motion does Stemcor adequately contest the facts that: (1) Plaintiff has a maritime claim against Defendant Stemcor; (2) the Defendants are not present within New York; or (3) the funds attached by the garnishee banks belong to Stemcor, the alleged alter-ego of GMN and Kremikovtzi. Thus, all the requirements of Rule B are satisfied. Plaintiff has properly pled the alter-ego relationship and submitted adequate evidence supporting its alter-ego allegations in its Verified Second Amended Complaint demonstrating that Stemcor, GMN and Kremikovtzi are not separate entities but rather different pockets in the same pair of pants. Therefore, Stemcor's motion to vacate should be denied.

## A. Plaintiff need only establish that it has met the four technical requirements of Rule B in order to satisfy its burden.

Under Supplemental Rule B, "an order of maritime attachment must issue upon a minimal *prima facie* showing" provided that the defendant cannot be "found within" the district in which the assets are sought to be attached. But under Supplemental Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules. It is clear from the text of Rule E(4)(f) that the party having

4

obtained the maritime attachment, bears the burden of showing that the attachment should not be vacated.

However, as recently confirmed by the Second Circuit Court of Appeals in *Aqua Stoli, supra,* the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff can establish that it has alleged a prima facie maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *See, Aqua Stoli,* at 444-5; *see also Brave Bulk,* at *11-12; *see further Tide Line, supra.*

Once a plaintiff has established the technical requirements stated in Rule B, the burden shifts to the defendant to prove the limited bases for vacateur. *Aqua Stoli* provides that an otherwise facially valid Rule B attachment may only be vacated upon three bases none of which is present here. *See Aqua Stoli,* at 444.

### B. Under *Aqua Stoli, supra,* the attachment must be maintained where Plaintiff has adequately plead its alter-ego claim.

*Aqua Stoli's* holding marks a departure from the prior "probable cause/reasonable basis standard" that certain courts applied before *Aqua Stoli.* As confirmed by several district court judges including Chief Judge Wood in *Tide Line,* Judge Castel in *Route Holding,* and this Court in *Brave Bulk,* a plaintiff no longer needs to show that it had "reasonable grounds" or "probable cause" to make alter-ego claims against a defendant in order to maintain the attachment. *See, e.g., Brave Bulk,* 2007 U.S. Dist. LEXIS at * 12. Rather, at the Rule E(4)(f) hearing, a plaintiff must only show that has *alleged* a *prima facie* valid alter-ego claim in order to satisfy Rule B.

Among others, *Tide Line*, *Route Holdings* and *Brave Bulk* are instructive on this point.

In *Tide Line,* as in the instant case, the plaintiff obtained a Rule B order of maritime attachment and garnishment against both Eastrade Commodities Inc., as the named entity in the charter party, and Transclear S.A. as its alter-ego. Transclear moved to vacate the attachment claiming that it was not an alter-ego of Eastrade. Tide Line then produced evidence that Transclear occasionally paid Eastrade's debts where it had no connection to the underlying contract. Then, just as Stemcor argues in its motion, Transclear claimed that it had a legal basis upon which to make the payments on Eastrade's behalf. Judge Wood found all of these factual arguments unnecessary and irrelevant in the post-attachment hearing. Particularly, she found that in light of the *Aqua Stoli* decision, the Court should exercise a very limited inquiry into the underlying facts. She reasoned that, when applying for a Rule B attachment, a plaintiff *need not provide any supporting evidence*; its complaint should suffice. In keeping with this principal, she held that *Aqua Stoli* implies that a plaintiff *is likewise not required to provide evidence showing that it has a claim against defendant,* to carry its burden under Supplemental (E)(4)(f) at the post-attachment hearing. *See Tide Line, supra.*

Judge Wood noted that, "in seeking to have an attachment vacated, a defendant may argue that a plaintiff does not have a "valid *prima facie* admiralty claim against the defendant." However, she further clarified that such a challenge must be based on *sufficiency of pleading.* *See Tide Line, supra,* (stating that it does not appear that the basis of defendant's argument may be that plaintiff has not provided sufficient evidence of such a claim). Thus, the only way for a defendant to show that a plaintiff does not have a maritime claim against an alter-ego is to prove

that the pleadings themselves are insufficient to state such a claim.

In *Tide Line*, the court found that mere evidence of paying agent, without ever mentioning the word "alter-ego", is not enough to sustain an alter-ego allegation. *See Tide Line at 40, 42.* However, the court ultimately refused to vacate the attachment allowing the plaintiff to amend its complaint to include conclusory alter-ego allegations to support the specific evidence of paying agent. *Id. at 42-45, 55-56.*

In *Route Holding*, following the *Tide Line* precedent, the district court limited its analysis to determining whether the Plaintiffs, Route Holding and Beam Company, had *sufficiently pled* their alter-ego claims against Marina World Shipping. The plaintiffs had alleged that Marina World Shipping was an alter-ego because it dominated and controlled the principal, IOOI. The district court found that plaintiffs' pleadings were enough to uphold the attachment, finding:

> the plaintiff alleges that MWS is the alter-ego of IOOI, but it does not simply leave it as a conclusory allegation. It goes on to allege that the reason it believes it is the alter-ego is because IOOI dominates an disregards MWS' corporate form to the extent that MWS is actually carrying on IOOI's business and operations as if the same were its own. It further goes on to allege that MWS, acting as paying agent, acts a paying agent or arranges for other nonparties to satisfy the debts and obligations of IOOI. *It seems to me a sufficient allegation.*

*See Transcript of Route Holding annexed hereto as Exhibit "A," at 12, lines 14-24.*

Further emphasizing the state of the law, on October 11, 2006, Judge Hellerstein denied a near identical alter-ego challenge raised by Defendant in regard to the maritime attachment *Secil Maritima U.E.E. v. Malev Shipping Co. Ltd., Evalend Shipping Co. S.A. and Plumfield Shipping Corp., 06 CV 6345 (AKH)*(denying defendants' motion to vacate an attachment under Rule B based on the relaxed post-*Aqua Stoli* standard). Moreover, and most recently, this Court applied

7

the *prima facie* standard in both *Brave Bulk, supra,* and *Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty. Ltd., et al.,* 07 CV 5798 (CM), 519 F. Supp. 2d 399, 409, (SDNY 2007). Thus, in light of the decisions in *Aqua Stoli, Tide Line, Route Holding, Secil, Brave Bulk,* and *Wilhelsen Premier,* the current state of the law is that a plaintiff need only allege a *prima facie* alter-ego claim against the alleged alter-ego of the principal defendant in order to satisfy its burden in this regard.

As indicated above, the Second Circuit Court of Appeals held in *Aqua Stoli* that it is *inappropriate* for a court to conduct a fact-intensive inquiry regarding the specifics of a plaintiff's claim at a post-attachment hearing. Rule E(4)(f) does not afford a defendant the opportunity to challenge the sufficiency of the plaintiff's pleadings or challenge the evidence supporting plaintiff's admiralty claim. A defendant may, if it wishes, raise such issues by way of a Rule 12(b)(6) motion to dismiss or Rule 56 motion for summary judgment but it may not do so in the context of an emergency hearing pursuant to Supplemental Rule E(4)(f). *Maersk, Inc. v. Neewra, Inc.,* 2006 U.S. Dist. LEXIS 53395 (S.D.N.Y. 2006)(refusing to apply the higher pleading standard used in a motion to dismiss in a post-attachment hearing "lest Rule 12(b)(6) be completely subsumed by Supplemental Rule E(4)(f)").1

Defendant Stemcor brought a motion to vacate under Rule E(4)(f), thus, the limited question presented to the Court is, "has Plaintiff adequately pled a *prima facie* alter-ego claim?" The answer is an unqualified yes.

---

1 Defendant argues without any documentary evidence, or affidavits that Stemcor provided a "financing facility" to GMN and Kremikovtzi. Under any burden, Stemcor has produced **no** evidence to rebut the Plaintiff's allegations.

### C. Plaintiff has adequately alleged a maritime claim against Stemcor.

Plaintiff has met its pleading burden. Plaintiff has properly alleged a maritime claim

against Stemcor. *See Verified Second Amended Complaint, ¶¶ 68-86 annexed to the Affidavit of*

*Thomas L. Tisdale as Exhibit "1."* In addition, Plaintiff has repeatedly alleged in its Verified

Second Amended Complaint and this memorandum, that Stemcor GMN, and Kremikovtzi are

alter-egos and that Stemcor is therefore liable for GMN and Kremikovtzi's breach of the

maritime contract with the Plaintiff. Particularly, Plaintiff made the following allegations in its

Verified Second Amended Complaint:

*       *       *

68.    Upon information and belief, GMN is the alter ego of Stemcor and K.C. because they dominate and disregard GMN's corporate form to the extent that Stemcor and K.C. are actually carrying on GMN's business and operations as if the same were their own.

69.    The Plaintiff's charter of the MV ZETLAND to GMN was guaranteed by K.C. *See Guarantee Letter dated August 21, 2007 annexed hereto as Exhibit "1."*

70.    Furthermore, upon information and belief, GMN is 100% owned by K.C. *See email from Bulfracht Shipbrokers dated August 14, 2007 12:25pm annexed hereto as Exhibit "2"* stating in pertinent part that "gmn – as a company Regis in sofia – 100pct owned by kremi."

71.    Upon information and belief and based upon the fixture recap and underlying charter party, Stemcor had no formal relationship to the charter of this Vessel.

72.    Upon further information and belief and based upon the information contained in the bills of lading, Stemcor had no connection to the load or discharge ports, and was not the shipper or consignee of the cargo in the Bills of Lading.

73.    Upon information and belief, Stemcor dominated and controlled GMN's interest in the fixture of the MV Zetland as the fixture was subject to Stemcor's confirmation and approval. *See August 14, 2007 8:12pm email*

9

*from Bulfracht Shipbrokers annexed hereto  as Exhibit "3"* stating "stem/shippers/rcvrs approval within 15th aug 18:00 hrs Sofia time."

74.   Furthermore, and upon information and belief, Stemcor required, because of its control over the charter, that its agent, "G&M-5 Ltd.", act as agents and brokers for GMN in this  charter. *See August 14, 2007 12:25pm email from Bulfracht Shipowners  annexed hereto  as Exhibit "2"* stating in pertinent part that "i already hv stem cfm fm CVRD for dates and size of 120k, financing will be done by stemcore uk – ths why need gm5 as agents at bourgas."

75.   Moreover, upon information and belief, Stemcor UK was responsible for the financing of this fixture between Transquay and GMN.  *See August 14, 2007 12:25pm email from Bulfracht Shipowners annexed hereas Exhibit "2"* stating in pertinent part that "i already hv stem cfm fm CVRD for dates and size of 120k, financing will be done by stemcore uk – ths why need gm5 as agents at bourgas."  It is of interest that Stemcor UK, not Stemcor's financing arm, Stemcor Trade Finance Limited, was responsible for the financing of the fixture of the  MV Zetland.

76.   Further, upon information and belief, Stemcor and K.C. have a common director or officer, Mr. Ralph Oppenheimer, who is the beneficial owner of Stemcor and is also on the K.C. supervisory board.

77.   Furthermore, and despite the fact that Stemcor had no known connection to the fixture of this Vessel, Stemcor made a US$7,500,000.00 freight payment on behalf of GMN to non-   party Zodiac Maritime Agencies, Transquay's agent. *See freight payment for the MV  Zetland dated January 17, 2008 annexed hereto as Exhibit "4."*  The only payment Plaintiff or its agent received under this charter was from Stemcor.

78.   It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter party contract.

79.   In an attempt to explain the freight payment annexed hereto as Exhibit "4," Stemcor's counsel, while copying Stemcor's in-house counsel states in an email dated January 31, 2008 that the payment was to settle "a debt it owed to Kremikovtzi by making a payment to a company called Zodiac Maritime Agencies at Kremikovtzi's instructions." *See Email dated January 31, 2008 annexed hereto as Exhibit "5".*[2]

---

2 It is interesting to note that at first Stemcor stated that the $7,500,000 payment was "to settle a debt it owed to Kremikovtzi" whereas in the memorandum of law in support of its motion,

80. However, pursuant to the charter, this payment was a debt of GMN's not K.C., as GMN was the charterer of the Vessel in this fixture and was referenced on the payment.

81. As such, upon information and belief, Defendant Stemcor acts as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant GMN, and/or receive payments being made to Defendant GMN.

82. In addition or in the alternative, Defendant GMN uses Defendant Stemcor as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

83. Upon information and belief, Defendant GMN is a shell-corporation through which Defendants Stemcor and K.C. conduct their business.

84. Upon information and belief, Defendant GMN has no separate, independent identity from Defendants Stemcor and K.C.

85. In the further alternative, Defendants Stemcor, K.C. and GMN are partners and/or are joint venturers.

86. In the further alternative, Defendants Stemcor, K.C. and GMN are affiliated companies such that Defendant Stemcor and K.C. are now, or will soon be, holding assets belonging to Defendant GMN and vice versa.

*See Verified Second Amended Complaint, ¶¶68-86, Tisdale Aff. Ex. "1."*

As shown above, Plaintiff has not only alleged the basis of its alter-ego claim, domination and control, but it has set forth facts upon which its claim is based and attached this evidence to the Verified Second Amended Complaint to support these allegations. These allegations are not "wholly conclusory" as Stemcor's counsel claims, but sufficient evidence of alter ego to support the attachment of Stemcor's funds pursuant to Rule B.

Plaintiff has specifically alleged, amongst other allegations, that Stemcor dominated and

---

Stemcor argues that it was, in fact, a "financing facility" or a loan. This inconsistency of position undermines Stemcor's unsupported position.

controlled GMN's charter of the MV ZETLAND, i.e. the "fixture," as the fixture was subject to Stemcor's confirmation and approval, that Stemcor paid $7,500,000 to the plaintiff's agent in freight on behalf of GMN. *See Verified Second Amended Complaint,* ¶¶ 73, 77.

Several judges in the district have recently found that allegations such as these satisfy the plaintiff's burden to allege a claim sufficient to withstand a challenge such as the one Stemcor has made here. For example, in *A. Coker & Co. v. Nat'l Shipping Agency*, No. 99-1440, 1999 U.S. Dist. LEXIS 7442 (E.D. La. May 17, 1999), the district court upheld the attachment where the Plaintiff alleged "insufficient capitalization, the alter ego's guarantee of the primary defendant, and that the two companies may have shared offices." *Wilhelmsen Premier,* at *25-26 citing *A. Coker & Co.* Similarly, in *World Reach Shipping Ltd. v. Industrial Carriers Inc.*, 2006 U.S. Dist. LEXIS 83224, 06 Civ. 3756 (NRB) (November 9, 2006), Judge Buchwald upheld the maritime attachment against the alter ego defendant where:

> World Reach alleges that BlueCoast "is the alter ego of ICI because ICI dominates and disregards BlueCoast's corporate form to the extent that BlueCoast is actually carrying on [ICI's] business and operations as if the same were its own, or vice versa." World Reach further alleges that BlueCoast "acts as paying agent, or arranges for other non-parties to satisfy the debts and obligations of ICI," the BlueCoast "has made hire payments to [World Reach] to satisfy ICI's debts and obligations," and that BlueCoast "was intimately involved in the specific details of 'the Charter Agreement]." These pleadings give reasonable grounds for piercing the corporate veil and plainly state a prima facie case that BlueCoast is an alter ego of ICI.

*World Reach*, at *11.

Most recently, in *Wilhelmsen Premier*, this Court upheld that attachment against the alter ego finding that the Plaintiff's burden at this stage is minimal and is met by "merely showing that the alter ego had paid one invoice of the primary defendant." *Wilhelmsen Premier,* at 410

quoting *Ullises Shipping Corp. v. Fal Shipping Co.*, 415 F. Supp. 2d 318 (S.D.N.Y. 2006).

The decision in *Ullises* is especially noteworthy as it was rendered in January of 2006, just before the Second Circuit's decision in *Aqua Stoli*. As such, the *Ullises* decision applied a higher standard than is now appropriate in this district. Even so, the *Ullises* court found reasonable grounds for piercing the corporate veil where plaintiff alleged only that defendant FAL Oil paid FAL Shipping's debts under the agreement with Ullises from FAL Oil accounts. The Court found that this evidence demonstrated that "FAL Oil and FAL Shipping do not operate at arms length and suggests that FAL Oil may exercise domination and control over FAL Shipping. Although this is not conclusive evidence, Ullises has met its burden of showing reasonable grounds for attaching the assets of FAL Oil." *Ullises Shipping Corp. v. FAL Shipping Co. Ltd., et al.*, 415 F. Supp. 2d 318, 325-6 (S.D.N.Y. Jan. 20, 2006).

Given all of the foregoing, there can be no question that Plaintiff has more than sufficiently alleged a valid *prima facie* admiralty claim against Stemcor. In addition to the pleadings, plaintiff has provided the available extrinsic evidence in the exhibits attached to the Verified Second Amended Complaint to support its alter-ego allegations, despite the fact that, pursuant to Rule B, it is not required to provide such proof at this early stage of the case.

In conclusion, Plaintiff has shown by way of its Verified Second Amended Complaint, this memorandum and the supporting Attorney Affidavit that it has a valid *prima facie* admiralty claim and that Stemcor is an alter-ego of GMN and Kremikovtzi such that it is liable for GMN and Kremikovtzi's debts to Plaintiff. Also, Defendant effectively concedes that it is not present in the District, and acknowledges that its property in the form of EFTs was attached in the

District. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002). Additionally, the

Defendant, Stemcor, has failed to cite any statutory or maritime law bar to the attachment. As

such, this Court's issuance of the maritime attachment pursuant to Rule B was proper. Stemcor's

insistence that the Plaintiff must prove its entire alter-ego case in a Rule E(4)(f) motion is

baseless and is in disregard of the purpose of the emergency Rule E(4)(f) hearing. Based on all

the foregoing, Defendants' motion to vacate attachment was improper.

## POINT II

### IN THE ALTERNATIVE, PLAINTIFF HAS ESTABLISHED THAT IT HAS A PRIMA FACIE ALTER-EGO CLAIM AGAINST STEMCOR

In the alternative, even assuming *arguendo* that the standard put forth by the Defendant is

correct, which is denied, Plaintiff has submitted sufficient evidence to show probable cause that

Stemcor is an alter-ego of GMN and Kremikovtzi.

### A. Defining an Alter-ego.

Under federal common law, the corporate form will be ignored and liability imposed on

another corporate entity or the principals, if it is shown that the interconnected organization was

utilized to perpetrate a fraud *or* where one entity or individual(s) so dominated another that it

was, in effect, carrying on the principal's business. *See Kirno Hill Corp. v. Holt*, 618 F.2d 982,

985 (2d Cir. 1980). In a maritime case, it is sufficient to allege that the parent or controlling

principal so dominated the subsidiary or other units within the group such that they were mere

tools of instrumentalities to carry on the overall business of the principal. *See Kirno Hill*, 618

F.2d at 985 *and Matter of Holburn*, 774 F. Supp. at 844 (S.D.N.Y. 1991).

14

While there is no precise test to determine whether an entity is an alter-ego of another, in general, the corporate veil may be pierced where it can be demonstrated that the parent or controlling entity was the "true" or prime mover behind the subsidiary. *See Carte Blanche (Singapore) v. Diners Club Intern*, 758 F. Supp. 908, 918 (S.D.N.Y. 1991). In *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F. 2d 131, 139 (2d Cir. 1991), the Second Circuit listed a number of factors that should be considered in determining whether to pierce the corporate veil:

> 1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issues of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms' length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and 10) whether the corporation in question had property that was used by the other of the corporations as if it were its own. *See generally,* Barber, *Piercing the Corporate Veil*, 17 Willamette L. Rev. 371, 398 (1981); *Directors Guild of America v. Garrison Prod.*, 733 F.Supp. 755, 760-61 (S.D.N.Y. 1990); *United States Barite Corp. v. M/V Haris*, 534 F. Supp. 328, 330 (S.D.N.Y. 1982).

*Id.*

Obviously, many of the documents required to establish some of these elements are solely in the control of the Defendants and discovery on these issues will be necessary. However, the Verified Second Amended Complaint sets forth considerable evidence which establishes the alter-ego relationship between Stemcor, GMN and Kremikovtzi.

At this stage in the proceeding, Plaintiff need not establish an alter-ego relationship to the degree expected at trial. Evidence of corporate domination or fraud is seldom available to the public, and a claimant is not expected, at this early stage, to produce fully documented alter-ego claims. Otherwise, a corporation that held its records tightly would be immune from suits based on alter-ego relationships. *See Maryland Tuna Corp. v. MS Benaries*, 429 F.2d 307 (2d Cir. 1970). Plaintiff has submitted sufficient evidence to show; 1) Kremikvotzi is inadequately capitalized,3 2) Kremikovtzi and Stemcor have at least one overlapping director, Mr. Oppenheimer, 3) Stemcor controls Kremikovtzi and GMN's charters and thereby dominates their business which is the subject of this case and 4) Stemcor has admittedly paid debts of GMN and not by the "financing" arm of the Stemcor group of companies. Without the benefit of discovery, Plaintiff has sufficiently established that Defendants Stemcor, GMN and Kremikvotzi are alter-egos in order to sustain the attachment at an (E)(4)(f) post-attachment hearing. With the benefit of discovery, Plaintiff will easily reveal the alter ego relationship between these companies.

## POINT III

### <u>STEMCOR'S REQUEST FOR COUNTERSECURITY MUST BE DENIED</u>

In its opposition papers, Stemcor's counsel requests countersecurity in the sum of $965,188.63 for the purported wrongful attachment of its assets. Plaintiff has not wrongfully attached Stemcor's assets. Moreover, Stemcor has not properly alleged a wrongful attachment claim. "A plaintiff in a maritime case may be liable in damages for the wrongful attachment of the defendant's property, but only on a showing of bad faith, malice or gross negligence." *See 2 Thomas J. Shoenbaum, Admiralty and Maritime Law* § 21-5, at 500 (2d ed. 1994); *see also*

---

3 Evidence of Kremikovtzi's financial difficulties is found in the accompanying Affidavit of Thomas L. Tisdale.

*Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.,* 56 F.3d 394, fn. 5 (2d Cir. 1995).

Stemcor has not adequately alleged or demonstated that Plaintiff acted in bad faith, malice or

gross negligence.  At all times, Plaintiff acted in good faith.

More importantly, even if wrongful attachment was alleged, wrongful attachment is not a

counterclaim that allows for the award of countersecurity pursuant to Supplemental Rule E(7).

Countersecurity is not awarded for a wrongful attachment counterclaim because "the wrongful

attachment could not have arisen out of the same transaction or occurrence with respect to which

the action was originally filed." *Id.* at 402, fn. 5.  As such, Stemcor's request for countersecurity

is improper and must be denied.

## CONCLUSION

For all of the foregoing reasons, Stemcor's motion to vacate must be denied.

Dated:        February 22, 2008
              New York, NY

                            Respectfully submitted,

                            The Plaintiff,
                            TRANSQUAY LIMITED PARTNERSHIP,

                       By: _____
                            Thomas L. Tisdale (TT 5263)
                            Lauren C. Davies (LD 1980)
                            TISDALE LAW OFFICES, LLC
                            11 West 42nd Street, Suite 900
                            New York, NY 10006
                            (212) 354-0025 (p)
                            (212) 869-0067 (f)
                            ttisdale@tisdale-law.com
                            ldavies@tisdale-law.com

17

## CERTIFICATION OF SERVICE

I hereby certify that on February 22, 2008, a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF SHOW CAUSE MOTION, MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE, OR IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF ORDER VACATING THE MARITIME ATTACHMENT was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

_____/s/_____<br>
Thomas L. Tisdale

# EXHIBIT "A"

1

69TVROUA                      Argument
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

ROUTE HOLDING INC., BEAM
COMPANY INC.,

                    Plaintiffs,

          v.                              06 CV 03428 (PKC)

INTERNATIONAL OIL OVERSEAS
INC. a/k/a IOOI, MARINA WORLD
SHIPPING CORP.,

                    Defendants.

------------------------------------x
                                          New York, N.Y.
                                          September 29, 2006
                                          11:30 a.m.

Before:

                    HON. P. KEVIN CASTEL,

                                          District Judge

                         APPEARANCES

TISDALE & LENNON LLC
          Attorneys for Plaintiffs
NANCY R. PETERSON
PATRICK F. LENNON

FREEHILL HOGAN & MAHAR LLP
          Attorneys for Defendants
MICHAEL E. UNGER
LAWRENCE J. KAHN

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

2

69TVROUA                    Argument

1       (In open court)
2       (Case called)
3               THE COURT:  This is Route Holding, Inc. v.
4   International Oil Overseas, Inc.
5               Is the plaintiff ready?
6               MS. PETERSON:  Yes, your Honor.
7               THE COURT:  State your appearance please.
8               MS. PETERSON:  My name is Nancy Peterson from the firm
9   Tisdale & Lennon, representing the plaintiffs Route Holding and
10  Beam Company.
11              THE COURT:  All right.  And for the defendant?
12              MR. UNGER:  Good morning, your Honor.  Michael Unger
13  from Freehill, Hogan & Mahar on behalf of the defendant Marina
14  World Shipping.  With me is my associate Larry Kahn.
15              THE COURT:  Good to see you.  Good to see you again,
16  Mr. Kahn.
17              MR. KAHN:  Good morning, your Honor.
18              THE COURT:  Good morning.  All right.  We are here on
19  the defendant's motion to vacate the maritime attachment.
20  Since the issuance of the maritime attachment in this case, we
21  now all have the benefit of the Second Circuit's decision in
22  Aqua Stoli, 460 F.3d 434, and also Judge Wood's very clear and
23  helpful decision in Tide Line, Inc. against the Eastrade
24  Commodities, Inc., and Transclear, S.A.  That was an opinion
25  issued by Judge Wood on August 15 -- I'm sorry, August 5th,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

69TVROUA                     Argument

1    2006; docket number is 06 CV 1979.  And as of seven minutes
2    ago, it had not yet appeared on Westlaw.
3              It does seem clear to me that we know what we're doing
4    here this morning in that the attachment was issued pursuant to
5    Supplemental Rule B.
6              We're now at the hearing under Rule E(4)(f), and it is
7    the party who obtained the ex parte attachment's burden to show
8    why the arrest or attachment should not be vacated or other
9    relief granted consistent with these rules.  So the party
10   obtaining the attachment may proceed.
11             MS. PETERSON:  Your Honor, Aqua Stoli set forth the
12   burden that plaintiff needs to satisfy in order to maintain the
13   attachment.
14             In order for Rule B attachment to issue, a plaintiff
15   must show that it has met the following four technical
16   requirements:
17             That it has alleged a maritime claim; that the
18   defendant is not found in the district; that the plaintiff has
19   attached defendant's funds within the district; and that no
20   other statutory bar to maritime attachment exists.
21             In addition, Aqua Stoli stands for the proposition
22   that the plaintiff's burden does not change at the Rule E
23   hearing.  The burden to obtain an attachment is the same as the
24   burden to maintain an attachment.  Judge Wood further clarifies
25   that.

4

69TVROUA                    Argument

1    THE COURT:  Well, let's back up for a second.  I'm not
2    sure that I agree with your statement of what Aqua Stoli held.
3    If you look at -- well, I'm not going to be able to give you an
4    exact page number; I don't have an F.3d version of it.  But the
5    text preceding Footnote 5, it recites that the plaintiff has to
6    show that it "has," not alleges, has a valid prima facie
7    admiralty claim against the defendant.  That's slightly
8    different than -- and maybe more than slightly different than
9    alleges a claim.
10   MS. PETERSON:  Right.  But Judge Wood clarifies in her
11   opinion that what having a prima facie claim amounts to is
12   properly alleging the elements of a maritime claim, and then an
13   alter ego claim.
14   She expressly stated that it is inappropriate to
15   engage in a fact-intensive inquiry as to the facts underlying
16   either the maritime claim or the alter ego allegations.
17   THE COURT:  But she points out that there is a
18   heightened pleading standard in a case brought, I guess
19   invoking maritime or admiralty jurisdiction, is that correct?
20   MS. PETERSON:  The heightened standard is to make the
21   defendant aware what he is pleading.
22   In the case of Tide Line, there was no alter ego
23   allegation made.  The only allegation that was made was that
24   the defendant was a paying agent of the interconnected entity.
25   In the case here, the plaintiff has alleged all the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

69TVROUA                    Argument

1  elements of federal common-law alter ego claim; namely, that
2  IOOI is an alter ego of Marina World Shipping; and that IOOI
3  dominates and controls Marina World Shipping to the extent that
4  it actually conducts business through Marina World Shipping.
5  It's completely separate factual -- it's distinguishable from
6  that case.
7        After we had satisfied our burden, the defendant has
8  three basis upon which it can vacate the attachment according
9  to Aqua Stoli; namely, that the defendant can be found in a
10 convenient adjacent jurisdiction that the defendant can obtain
11 personal jurisdiction in a district where the plaintiff is
12 located or that the plaintiff has obtained sufficient security.
13       Aqua Stoli explicitly listed the three bases upon
14 which the defendant may vacate an attachment.  It left the door
15 open for some equitable concerns; however, those equitable
16 concerns are not here today.  Defendant is a debtor who's not
17 paying its debts.  And if our case is borne out, as we suggest
18 it will be, it will turn out that IOOI and Marina World
19 Shipping are the same company who are avoiding paying their
20 debts to the plaintiffs.
21       Defendant is relying on outdated case law when it
22 suggests that we must prove a probable cause or a reasonable
23 basis, reasonable grounds standard for making our alter ego
24 allegations.  Once we have satisfied the basic elements of a
25 maritime claim and an alter ego claim, we have satisfied our

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

69TVROUA                          Argument

1   burden in that regard.
2          Plaintiff has alleged a maritime claim against IOOI
3   that it has breached the maritime contract, and it has alleged
4   the alter ego claim against Marina World Shipping.
5   Furthermore, in subsequent submissions, we have submitted a
6   raft of evidence showing a relationship between IOOI and Marina
7   World Shipping, which, according to both Judge Casey, in the
8   recent case of Maersk v. Neewra, is you can review in order to
9   determine if we had made adequate allegations.  In addition,
10  Judge Kaplan, in a recent case of Metalinvest v. Burwil
11  Resources also held that you review the entire record to
12  determine if we have met our basic pleading allegations.
13         As the plaintiff has satisfied its burden to show that
14  it has a prima facie claim, and defendant has not met its
15  burden to show the three reasons for vacatur, the attachment
16  should be upheld and the motion to vacate denied.
17         THE COURT:  Thank you, Ms. Peterson.  Let me hear from
18  Mr. Unger.
19         MR. UNGER:  Good morning, your Honor.  Let me begin by
20  referring the Court to the advisory committee notes of Rule B.
21  Under those notes, it says contrary to whatever interpretation
22  plaintiffs want to put on Aqua Stoli, the defendant can attack
23  the pleadings for insufficiency or any other defect in terms of
24  the process.
25         Here, the defect is that the complaint is plainly
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

7

69TVROUA                    Argument

1   insufficient to meet the standards required under Rule 8(a),
2   let alone the higher standard required under Rule 9(b).
3           The case law is such, and, in particular, I refer the
4   Court to In Re:  Currency.Conversion Fee Anti --
5           THE COURT:  If I may just have you pause for a second.
6   Why do you invoke Rule 9(b)?
7           MR. UNGER:  Rule 9(b) is the specificity of pleading
8   rule, your Honor.
9           THE COURT:  I'm familiar with that.
10          MR. UNGER:  And here, the courts have said that
11  veil-piercing claims are generally subject to the pleading
12  requirements imposed by Rule 8(a), which requires only a short
13  and plain statement of the claim, showing that the pleader is
14  entitled to relief.
15          However, when a veil-piercing claim is based on
16  allegations of fraud, the heightened pleading standard Rule B
17  is the lens through which those allegations have to be
18  examined.  Okay.
19          Here, they haven't alleged fraud.
20          THE COURT:  So that goes back to my question.  Why are
21  you talking to me about Rule 9(b)?
22          MR. UNGER:  I just refer to Rule 9(b), but what I'm
23  saying is it doesn't even reach the lower standard of Rule 8.
24          THE COURT:  But we're in agreement Rule 9(b) does not
25  control in this case?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

8

69TVROUA                    Argument

1              MR. UNGER: That's correct, your Honor.
2              THE COURT: Okay. Thank you.
3              MR. UNGER: I apologize if it was confusing. But the
4    case I was referring to, In Re: Currency Conversion Fee
5    Antitrust Litigation, which is 265 F. Supp. 2d 385 Second
6    Circuit -- I'm sorry, Southern District 2003.
7              The Court stated in that case that purely conclusory
8    allegations cannot suffice to state a claim based on veil
9    piercing or alter ego liability, even under the liberal notice
10   pleading standard under Rule 8(a).
11             The plaintiff has to come in, and the plaintiff has to
12   demonstrate with proof, credible proof, that there is an alter
13   ego relationship between the two defendants that they've named.
14   Plaintiff only has a real cause of action and a real gripe with
15   IOOI with whom it had its contract, because IOOI didn't pay up
16   or hasn't agreed to post security, and I don't know exactly
17   where plaintiff and IOOI are in terms of their arbitration.
18             Plaintiff in this action decided that they were going
19   to come into court and add MWS, Marina World, as a defendant,
20   and that's a tactic that they are using in order to try to
21   strongarm either a settlement or the posting of security by
22   IOOI in connection with the London arbitration and the merits
23   of that dispute.
24             Turning back to the Aqua Stoli case. It's incorrect
25   to say that there were only three bases on which to challenge

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

9

69TVROUA                    Argument

1    an attachment.  The Second Circuit specifically said in Aqua
2    Stoli that among the bases to challenge are, and it proceeds to
3    list the three examples that counsel for the plaintiff cited.
4         THE COURT:  And then they go on to further define the
5    universe by saying, "We also believe vacatur is appropriate in
6    other limited circumstances," which are well-described in the
7    opinion.  And they also describe what circumstances do not
8    qualify for vacating the attachment.  Go ahead.
9         MR. UNGER:  Here, your Honor, what we're challenging,
10   effectively, is that there is no maritime claim.  And,
11   therefore, the Court lacks subject-matter jurisdiction in
12   respect to the claims against Marina World.  And the reason the
13   Court lacks subject-matter jurisdiction is because there is no
14   alter-ego relationship between the two named defendants.
15        THE COURT:  Where do I find your subject-matter
16   jurisdiction argument laid out?
17        MR. UNGER:  It's not specifically set forth as such in
18   our papers, your Honor; but what we do argue is that there is a
19   defect in the pleadings.  And that's the defect.  The defect is
20   that there is a lack of jurisdiction here.  And there's a lack
21   of jurisdiction because there is no, in fact, alter-ego
22   relationship between the companies; and there is no -- the way
23   that it's pled in the complaint, that doesn't suffice under
24   Rule 8(a) to state a maritime claim.
25        The Aqua Stoli case says, in effect, that plaintiff

10

69TVROUA                    Argument

1   has to show that it has a valid maritime claim, okay.  And if
2   that's the case, you're allowed to test the validity of whether
3   that claim that they are alleging is valid.
4           Here, this Court has the right to look at the
5   evidence.  And plaintiff having the burden of proof, they
6   haven't shown a maritime claim against Marina World.  And the
7   reason they haven't is that the evidence that they have put
8   forth, and let's look at what they put forth, before they ever
9   filed the claim, all they knew was there were a couple of
10  payments that had been made over eight years by Marina World on
11  behalf of IOOI.  And Mr. Bakri from Marina World explains in
12  his several declarations why that was done.  That's been
13  unchallenged.  And I don't believe that that gave a good-faith
14  basis to file this complaint in the first place.
15          But even if you get past that and you look at the rest
16  of the evidence, what do we have?  A couple more payments we
17  learn have been made.  But that's it.  Then you get into all
18  the plaintiff's smoke-and-mirrors in terms of trying to tie
19  Marina World and IOOI together.  And, quite frankly, your
20  Honor, they don't even come close.
21          The evidence that they show at best is based on
22  speculation, rumor, innuendo, hearsay from unnamed "market
23  sources" and investigations that were commenced.  They give you
24  a four-year old report in connection with IOOI and its supposed
25  relationship with the Bakri group, which Mr. Bakri explains is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

69TVROUA                    Argument
1   basically a loose association of companies that try to
2   capitalize on the goodwill of one another.
3           You have, in addition to that, plaintiff coming in
4   with all kinds of suggestions in terms of the fact that there
5   are shared addresses, IT information that's shared.  None of
6   this adds up to putting Marina World being so dominated or
7   controlled by IOOI or the converse, that they can meet the
8   ten-point tests that are set out in terms of what you have to
9   show in order to have an alter-ego claim.
10          At best, all plaintiff has done is shown, if you want
11  to accept it, that IOOI may have some kind of relationship with
12  the Bakri group, Bakri navigation, and any of the 12 or 13
13  other companies that are named throughout the course of the
14  papers.  But what's not in any of that is Marina World in this
15  web that they've painted.  Marina World is out here.  And
16  there's no evidence which ties Marina World directly to IOOI,
17  or to IOOI through the Bakri group, or any of the Bakri group
18  companies.
19          Effectively, if you follow plaintiff's argument, up on
20  the west side of Manhattan you have the Potamkin Auto Group.
21  And he's got ten different dealerships.  And if I buy a
22  Chrysler from Potamkin Chrysler, and I don't like it, under
23  plaintiff's theory, I could allege that their alter egos and go
24  after Potamkin Chevy.  Why?  Because Mr. Potamkin has his hand
25  in a whole bunch of these dealerships.  Mr. Potamkin may own
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

12

69TVROUA                          Argument

1    the various buildings or have a company that owns the various
2    buildings the dealerships are in. That doesn't get you over
3    the hump.
4              There's no good-faith basis to have brought this
5    claim. And they haven't shown it even when they've had the
6    burden of showing it, that there is an alter ego relationship.
7              Thank you, your Honor.
8              THE COURT: Thank you, Mr. Unger. Let me hear from
9    the plaintiff. And I guess a question I would like answered is
10   does supplemental Rule E(2)(a) apply as to the pleading. And
11   let me hear as to how does the plaintiff view that rule as
12   affecting its pleading obligation here.
13             MS. PETERSON: What do you explicitly mean by Rule
14   E(2)(a)? Do you mean the pleading requirement?
15             THE COURT: All right. There is a requirement that,
16   "The complaint state the circumstances from which the claim
17   arises with such particularity that the defendant or claimant
18   will be able, without moving for a more definite statement, to
19   commence an investigation of the facts and to frame a
20   responsive pleading."
21             And Second Circuit has held that this standard is more
22   stringent than the pleading requirements of the Federal Rules
23   of Civil Procedure. That's what I'm referring to.
24             MS. PETERSON: Your Honor, first, I believe that we
25   have satisfied that burden; and that we have stated the facts

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

69TVROUA                    Argument

1    and circumstances for having the breach of the contract and the
2    reasons behind us attaching the funds of Marina World Shipping;
3    namely, that they are in an alter ego relationship such that we
4    do not have to move for a more definite statement.
5            And, subsequently, we have submitted considerable
6    evidence in our various submissions and declarations clarifying
7    our pleadings and putting forth more evidence.
8            In addition, I don't believe that the standard -- that
9    we should apply a motion-to-dismiss standard at the Rule E
10   hearing.  We're not judging the sufficiency of the pleadings in
11   terms of a motion to dismiss any set of facts upon which relief
12   can be granted.  We're looking at a Rule E special hearing at
13   which we're seeing if the elements of the claim have been
14   alleged, and if the circumstances has also been alleged,
15   according to Rule B(a)(2).
16           Judge Casey explicitly addressed this in the case of
17   Maersk v. Neewra, where he said you can look at the entire
18   record to determine a pleading burden, unlike a motion to
19   dismiss; and that if we were to apply any set of facts or look
20   at the facts, Rule E would completely subsume Rule 12(b)(6).
21   There would be no difference, included there should be a
22   difference in the standard.
23           If the defendants would like to challenge the facts
24   underlying our pleadings, they should raise a motion to dismiss
25   or a motion for summary judgment.  However, that is the

14

69TVROUA                          Argument

1   appropriate form in which to challenge them.  Right now we're
2   looking at the bare bones of the complaint and our supplemental
3   submissions.
4        May I add a few -- address their argument?
5        First of all, as to the subject-matter jurisdiction
6   argument that they have made, the defendant does not dispute
7   that we have alleged a maritime claim against IOOI.  We have
8   alleged an alter-ego claim against Marina World Shipping.
9   Therefore, it's an alter-ego maritime claim.  In the
10  subject-matter jurisdiction, it's not relevant and wasn't
11  briefed by the defendants.
12       THE COURT:  In other words, what you're saying is even
13  if for some reason I accepted everything that the defendants
14  said and tomorrow granted a motion to dismiss Marina World from
15  this case, this Court's subject-matter jurisdiction would not
16  evaporate?
17       MS. PETERSON:  Exactly.
18       THE COURT:  Thank you.  Go ahead.
19       MS. PETERSON:  As to the evidence, where they are
20  attacking the evidence as hearsay and in the declarations, they
21  are holding us to a trial standard.  This is the Rule E
22  hearing.  You can submit any sort of evidence at this stage to
23  support your allegations.  And we can submit case law to
24  support that, if your Honor would like.
25       In addition, there is no case law to suggest that we

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

69TVROUA                          Argument

1   have to submit proof at this stage of the hearing to support
2   our allegations. Aqua Stoli and Judge Wood found that proof at
3   this stage is inappropriate; and that would be going directly
4   against her decision, I feel, to require to submit all facts at
5   this stage prior to discovery or being able to use discovery
6   tools to obtain evidence.
7           And even assuming arguendo that the defendants are
8   correct that we have to make some sort of evidentiary showing,
9   which we vigorously deny, we have shown significant evidence
10  that IOOI and Marina World Shipping are, in fact, alter egos.
11          Even without the benefit of discovery, we have
12  uncovered 15 payments being made by Marina World Shipping on
13  behalf of IOOI. There's been no evidence submitted to show
14  that there was -- Mr. Bakri claims that there's an assignment
15  of payment. However, there's absolutely no paper, there's no
16  evidence of a debt being assumed from Marina World Shipping to
17  IOOI, there's no evidence of an assignment actually being made,
18  and the people that received the payments can confirm that they
19  were never informed of an assignment. The only evidence is a
20  self-serving statement that a payment assignment can be made.
21          And it suspends disbelief to believe that in these 15
22  separate incidences that we know about, they executed
23  assignments of payment. In addition, IOOI refers to Marina
24  World Shipping's account as its own. In the two instances
25  where IOOI owed money to a creditor, and it informed them that

16

69TVROUA                          Argument

1    it would be sending money from its bank, when the confirmation
2    came through, it was from Marina World Shipping.  It is
3    referring to Marina Shipping as its own account and using it as
4    its piggy bank:  Its role is to sign the maritime documents;
5    Marina World Shipping's job is to pay the debts.  And in this
6    way, it completely insulates IOOI and the Bakri family-at-large
7    from liability.
8        IOOI and Marina World Shipping reside at the same
9    location in Saudi Arabia at the Al Dulas Bakri Building owned
10   by a Bakri corporation.  Mr. Bakri has submitted a lease
11   allegedly showing that this is an arm's length transaction that
12   Marina World Shipping leases from the owner.  However, this
13   lease does not specify an office, a floor.  This is a lease
14   that specifies that they have leased somewhere in the Bakri
15   building.  This has no evidence to show that, in fact, they
16   maintain a separate office or in any way separate from IOOI.
17       In addition, the directors of IOOI are all apparently
18   employed by the Bakri family.  Marina World Shipping directors
19   are made up of all Bakri family members.  IOOI's directors are
20   all apparently employees of the Bakri corporations.  One is in
21   the legal department of a Bakri-owned corporation; one is a
22   member of and works for a self-described company in the Bakri
23   organization; and the other one works in another separate
24   subsidiary of a Bakri corporation.  There's clear ties between
25   these directors.

17

69TVROUA               Argument

1      Marina World Shipping and IOOI are one entity; the two
2  pockets in the same pair of pants.
3      The maritime report, which defendants claim is four
4  years old -- which is four years old, but which is equally
5  relevant today, shows that the Bakri family uses IOOI as their
6  chartering arm.  They use it to enter into transactions.  And,
7  as I said; Marina World Shipping is the piggy bank.  They are
8  almost like two departments; they are the same company.
9      And, finally, the audit that Mr. Bakri submitted
10  allegedly to show that it has above-the-board records, reveals
11  that it enters into related party transactions regarding ship
12  charters.  What these transactions are, I am unsure.  However,
13  upon a minimal amount of discovery, I believe we can find out.
14  However, this in no way establishes that they are separate from
15  IOOI.
16      And, in addition, again, upon a minimal amount of
17  discovery, we believe we can uncover many more payments made on
18  behalf of Marina World Shipping -- made on behalf of IOOI by
19  Marina World Shipping.
20      The owners in this case have approached people in
21  order to find out about more payments; however, they came to
22  them and said we have a confidentiality clause in our charter
23  party.  So they couldn't help even if they wanted to.  Upon
24  being awarded discovery, we can certainly clarify how often
25  Marina World Shipping is certainly paying on behalf of IOOI.

18

69TVROUA                    Argument

1        And, as such, I believe plaintiff has met its burden,
2   either under the defendant's alleged pleading requirements or
3   under whatever Judge Wood's pleading requirements in Tide Line.
4   And for that reason, the attachment should be upheld.
5        THE COURT:  Thank you.  It is the plaintiff's burden,
6   and so the plaintiff gets to go first and last; but, Mr. Unger,
7   I'll give you an opportunity briefly if there's something
8   additional you wanted to say.
9        MR. UNGER:  A couple real quick points, your Honor.
10  We're back to the has versus alleges argument in looking at
11  what they talked about.  The evidence, it doesn't have to be
12  admissible at this stage, but it has to be credible.  And it
13  has to support the allegations.  And, quite frankly, the
14  evidence that they have does neither.
15       The allegation that Marina World hasn't supplied any
16  paper to document the assignments, it's not Marina World who
17  has the burden of proof, it's the plaintiff.  And it was never
18  challenged by the plaintiffs, okay.  The fact that IOOI says we
19  have instructed our bankers, I don't know why, but it certainly
20  is not compelling evidence that there is an alter-ego
21  relationship.  And, in fact, the argument that Marina World is
22  used as IOOI's bank is undermined by the fact that IOOI paid
23  the settlement in the prior case, the Garda Shipping case,
24  which is referred to in the papers, out of its own funds.
25  They're holding the lease to U.S. standards rather than Saudi

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

69TVROUA                         Argument

1    standards; yet they don't have any evidence to show you what
2    the practice is in terms of Saudi leasing of offices.
3    Mr. Bakri is the only evidence that is before the Court, and
4    Mr. Bakri explains what happens.  Okay.
5              They never closed the circle between IOOI, the Bakri
6    group, and Marina World.  The four-year old report is not
7    relevant.
8              In terms of any suggestion as to discovery, discovery
9    has never been asked for prior to today, and it shouldn't be.
10   In terms of the suggestion that the motion should be held only
11   in terms of a summary judgment standard, basically that allows
12   the plaintiff then in any instance, with even the barest
13   whisper of a connection between two companies, to say, A is the
14   alter ego of B; and that alleged alter ego can't challenge it
15   until it's gone through miles and miles of legal hoops and
16   legal proceedings, effectively all the way to trial.
17             If Marina World had not challenged the money being
18   attached in this instance, look at what would have happened.
19   Plaintiff would have had to get a judgment -- I'm sorry, an
20   award in London against IOOI, and then seek to confirm that
21   award.  And then plaintiff would still have the burden of
22   proving down the road that IOOI and MWS are alter egos in order
23   to go ahead and collect a judgment here against MWS.
24             So it goes beyond the realm of common sense to say
25   that they shouldn't have to have that ability to go ahead at

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

69TVROUA                    Argument

1   this early stage and have some credible evidence that the two
2   are linked in order to have taken the step that they have done.
3       MR. KAHN:   Your Honor, if I could be heard on just one
4   brief point brought up by plaintiffs regarding the Maersk v.
5   Neewra case, which was recently decided by Judge Casey, and the
6   dismissal standard that we're also seeking here.
7       As Mr. Unger said, the Court would still have
8   jurisdiction over the case generally, but only against IOOI if
9   the case is dismissed against Marina World.
10      And what occurred in the Maersk v. Neewra case, if you
11  look at it carefully, you'll see that the plaintiffs are
12  expanding what was actually said in that case.   In the Maersk
13  v. Neewra case, what happened was the defendant moved to vacate
14  the attachment on maritime attachment grounds, and then also
15  sought to dismiss a RICO cause of action on the grounds that it
16  was not sufficiently pled.   And the Court held that it was
17  improper at that time to attack the RICO cause of action in an
18  E(4)(f) hearing.   The Court found that there was no basis to do
19  that, particularly where the defendant had not yet appeared.
20      One slightly complicating wrinkle in that case was
21  that the defendant, who appeared only in the guise of garnishee
22  and not as the defendant, it was proven at the E(4)(f) hearing
23  that the garnishee actually was the defendant.   He was playing
24  a name game; he had essentially multiple IDs with slightly
25  different spellings of his name.   And Judge Casey saw through

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

69TVROUA                    Argument

1   that and saw this is all the same person.
2         But with respect to the standard for dismissal, Judge
3   Casey held that what was going on in that case was that it was
4   improper in the context of an E(4)(f) maritime hearing
5   concerning whether or not an attachment should be vacated to
6   challenge whether a RICO cause of action was sufficiently pled
7   under 9(b).
8         And so the reading urged by the plaintiffs here I
9   think is over-expansive, goes well beyond what Judge Casey
10  actually decided in the Maersk v. Neewra matter.
11         Thank you.
12         THE COURT:  Thank you.  On May 4th, 2006, I signed an
13  order directing the clerk to issue maritime attachment against
14  property of IOOI and Marina World.  Thereafter, I scheduled an
15  initial pretrial conference in this case, and had a conference
16  held on July 14th.  The defendant indicated a desire to move to
17  vacate the attachment, and I set a schedule for the motion to
18  be made four days later, set a date for replies, responses and
19  replies, and set a date for a hearing of August 1, 2006.
20         And there is certainly nothing unusual or
21  inappropriate about it, but I do want to make it plain for the
22  record, subsequently I received requests to adjourn the
23  hearing, including a letter request by Mr. Unger dated July
24  31st, which caused me to move it till August 28th.  And then a
25  further request from Ms. Peterson that it be adjourned to a

22

69TVROUA                         Argument

1    later date, and it was moved to today.  So that's what brings
2    us here today.
3          This is the hearing required under Rule E(4)(f) of the
4    supplemental rules for certain admiralty and maritime claims.
5    And the rule provides that whenever property is arrested or
6    attached, any person claiming an interest in it shall be
7    entitled to a prompt hearing at which the plaintiff shall be
8    required to show why the arrest or attachment should not be
9    vacated, or other relief granted consistent with these rules.
10          In the very recent decision of the Second Circuit in
11   Aqua Stoli, which is 2006 Westlaw, 2129336, and that is now
12   recorded at 460 F.3d 434 Second Circuit, July 31, 2006, the
13   Court had occasion to examine the historical underpinnings of
14   maritime attachment and the process by which maritime
15   attachment may be vacated.
16          I have spent some time with that opinion in examining
17   it, studying it, and I'm not going to endeavor to summarize it
18   here today.  But I do note that the holding of the Court is
19   that in addition to having to meet the filing and service
20   requirements of Rule B and E, an attachment should issue if the
21   plaintiff shows that, one, it has a valid prima facie admiralty
22   claim against the defendant; two, the defendant cannot be found
23   within the district; three, the defendant's property may be
24   found within the district; and, four, there is no statutory or
25   maritime law bar to the attachment.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

69TVROUA                    Argument

1        And conversely says, Aqua Stoli, a district court must
2   vacate an attachment if the plaintiff fails to sustain his
3   burden of showing that he has satisfied the requirements of
4   Rule B and E.
5        The Court also outlined certain other limited
6   circumstances which do not appear to be relevant here.
7   Specifically, it outlined a circumstance where the defendant is
8   subject to suit in a "convenient adjacent jurisdiction, and
9   where the plaintiff could obtain in personam jurisdiction over
10  the defendant in the district where the plaintiff is located,
11  or the plaintiff has already obtained sufficient security for
12  the potential judgment by attachment or otherwise."
13       Those circumstances, i.e., the limited circumstances,
14  have no application in this case.
15       I conclude that the plaintiff has met the requirement
16  that the defendant cannot be found within the district; that
17  the defendant's property may be found within the district; and
18  that there is no statutory or maritime law bar to the
19  attachment.  I consider, however, whether a valid prima facie
20  admiralty claim against the defendant has been asserted.
21       Now, there is much discussion, and I suppose it will
22  be a continuing discussion, as to how a district court is to
23  determine whether there is a valid prima facie admiralty claim.
24  I think it is fair to say that after Aqua Stoli, it cannot
25  credibly be argued that there is a probability of success on

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

69TVROUA                    · Argument

1    the merits type standard.  But I really don't, in this case,
2    have to spend too much time with whether it is something to be
3    determined solely from the face of the pleadings or whether
4    this Court can and should consider matters outside the four
5    corners of the pleading, because under either standard, I find
6    that the plaintiff has alleged a valid prima facie admiralty
7    claim.
8             I'm mindful of the dictates of supplemental Rule
9    E(2)(a), that there must be at least enough particularity so
10   that the plaintiff -- or, rather, the defendant can commence an
11   investigation of the facts and frame a responsive pleading; and
12   that this is a higher pleading requirement than the Rule 8(a)
13   requirement.
14            Here, the plaintiff alleges that MWS is the alter ego
15   of IOOI, but it does not simply leave it as a conclusory
16   allegation.  It goes on to allege that the reason it believes
17   it is the alter ego is because IOOI dominates and disregards
18   MWS's corporate form to the extent that MWS is actually
19   carrying on IOOI's business and operations as if the same were
20   its own.  It further goes on to allege that MWS, acting as
21   paying agent, acts as paying agent or arranges for other
22   nonparties to satisfy the debts and obligations of IOOI.
23            It seems to me that is a sufficient allegation.  If
24   and to the extent it is not a sufficient allegation, I look to
25   the declaration of Hara Anastasatou.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

69TVROUA                    Argument

1    Now, the declaration referenced goes into the issue of
2    common ownership and control, alleging that the two are a
3    single economic entity. Some of the facts that are set forth
4    there are consistent with alter ego, but they could also be
5    consistent with one shareholder owning two separate
6    corporations. There's nothing in law that prohibits a single
7    shareholder from doing business through separate corporations,
8    provided the separate corporate form is maintained.
9    But what I find impressive about the declaration is it
10   gives considerable particularity and description to instances
11   where MWS made a payment on behalf of IOOI, it gives chapter
12   and verse, it gives the details, it gives the time, the place,
13   and the circumstances, and it gives a number of examples. And
14   so I find paragraphs 20 through 43 of the declaration to be of
15   particular help and utility.
16   The prerequisites for piercing the corporate veil are
17   as clear in federal maritime law as in shoreside law. That's a
18   point that has been made in the Kirno Hill case; and it's clear
19   that the veil will be pierced only if a corporation is used by
20   another entity or individual to perpetrate a fraud or, the
21   operative word being "or," was so dominated that its corporate
22   form was disregarded and the notion that a way to prove veil
23   piercing is by showing that the alleged alter ego so dominated
24   and disregarded its alter ego's corporate form, that the alter
25   ego is actually carrying on the controlling party's business

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

69TVROUA                    Argument

1   instead of its own, is an extremely well-recognized,
2   well-established means of demonstrating corporate veil
3   piercing.
4           I look specifically to pages 25 to 27 of Judge Wood's
5   well-reasoned and thoughtful opinion in Tide Line, including
6   the citation up to the factors outlined in William Passalacqua
7   Builders v. Resnick.
8           Unlike Tide Line, of course, this is a case where the
9   alter ego allegation is on the face of the complaint.  Whether
10  I look at it in terms of the complaint or I look at it in terms
11  of the complaint taking into account the plaintiff's
12  submissions, as well as the defendant's submissions, and the
13  argument presented here today, I conclude that there is a valid
14  prima facie admiralty claim; that all other requirements of
15  Rule B and E have been met; that there is not a limited
16  circumstance, as outlined in Aqua Stoli, for vacating the
17  attachment under the limited circumstances doctrine.
18          So I conclude that the plaintiff has, at this hearing,
19  met each and every element of the plaintiff's burden; and,
20  therefore, the motion to vacate the attachment is denied.
21          Is there anything further?
22          MS. PETERSON:  No, your Honor.
23          MR. UNGER:  No, your Honor.
24          THE COURT:  Thank you all very much.
25                          *    *    *