**William R. Bennett, III, Esq.**
**Bennett, Giuliano, McDonnell & Perrone, LLP**
**Attorneys for Defendant STEMCOR UK LIMITED**
**494 Eighth Avenue, 7th Floor**
**New York, New York 10001**
**Telephone: 646-328-0120**
**Facsimile: 646-328-0121**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

TRANSQUAY LIMITED PARTNERSHIP,

Plaintiff,

- against -

GLOBAL MARITIME NAVIGATION LTD., a.k.a. GLOBAL MARITIME NAVIGATION OOD, a.k.a. GLOBAL MERITAYM NEVIGEYSHAN, a.k.a. NOVAIDEYA-2004, KREMIKOVTZI A.D. a.k.a. KREMIKOVTZI CORP., a.k.a. KREMIKOVTSI, KREMIKOVTZI TRADE E.O.O.D., a.k.a. KREMIKOVTZI TRADE LTD., a.k.a. KREMIKOVTZI TREYD, FINMETALS HOLDING ALD., a.k.a. FINMETALS HOLDING EAD, a.k.a. DARU METALS LTD., GSHL BULGARIA S.A., GLOBAL STEEL HOLDINGS LTD., a.k.a. GLOBAL STEEL a.k.a. GSHL, STEEL SHIPPIONG AND FORWARDING PLC, a.k.a. STIL SHIPING END FORUARDING, a.k.a. SSF, and STEMCOR (UK) LIMITED, a.k.a. STEMCOR UK LIMITED,

Defendants.

------------------------------------------------------------X

07 CV 11130 (CM)
ECF CASE

**DEFENDANT STEMCOR'S REPLY TO PLAINITIFF'S OPPOSITION TO VACATE THE ORDER OF ATTACHMENT**

Defendant Stemcor UK Limited ("Stemcor") respectfully submits, in further support of its motion to vacate the attachment of its funds, the Declaration of Andrew Goldsmith (Exhibit A hereto) and this reply memorandum in response to plaintiff's opposition to the motion to vacate.

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir. 2006) did not set forth a bright-line rule, or for that matter a limitation, as to the grounds that would permit a vacatur of a Rule B attachment.

Rule E(4)(f) provides, in relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules....

The Second Circuit, as well as the Courts in this District, have recognized that the text of Rule E(4)(f) itself does not explain under what circumstances the District Court could vacate an attachment. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d at 438.

The question presented in Aqua Stoli was to what extent the District Court "**may** require a showing by the plaintiff beyond the simple fact that the textual requirements of Rule B have been met." The Second Circuit in Aqua Stoli held that it did "not follow, however, that district courts are without any equitable discretion to vacate maritime attachments that comply with Rule B." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d at 444. This is an important statement by the Second Circuit because it permits the District Court to exercise its equitable discretion to vacate attachments when warranted.

The precise boundaries of a District Court's vacatur power was not before the Second Circuit in Aqua Stoli. Accordingly, the Second Circuit in Aqua Stoli was extremely careful in writing its opinion stating that "as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court **may** vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in

the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. The Second Circuit did not rule that the above three grounds were the *only* reasons a vacatur may be granted. In fact, the Second Circuit readily admitted that the "*precise boundaries*" of a district court's vacatur powers may go beyond the limited grounds stated therein. See Aqua Stoli, 460 F.3d 434.

Although Rule E does not explicitly mention a District Court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish an equitable grounds for vacatur. Stemcor has surpassed its burden by conclusively establishing that equity falls in its form and that the self-serving conclusory allegations of plaintiff that Stemcor is an alter ego of one or more of the defendants are false and not supported by a sufficient pleading per Rule E(2)(a).

In Dolco Inv., Ltd. v. Moonriver Development, Ltd., 486 F.Supp.2d 261 (S.D.N.Y. 2007), Judge Sweet found that plaintiff's allegations of "alter ego" within a complaint, similar to the one at issue here, was insufficient to maintain an attachment. Judge Sweet writing that, "under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." Dolco Inv., Ltd., 486 F.Supp.2d 261 citing Murray v. Miner, 74 F.3d 402, 404 (2d Cir.1996), "Federal courts sitting in admiralty must apply federal common law when examining corporate identity." In re Holborn Oil Trading, Ltd., 774 F.Supp. 840, 844 (S.D.N.Y.1991) (citations omitted). "Federal common law in the Second Circuit involves a two pronged test for piercing the corporate veil: the party sought to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the controlling party's business instead of its

own." Dolco Inv., Ltd., 486 F.Supp.2d 261 (quoting Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir.1980)).

Thus, there are two distinct theories under which a maritime plaintiff may pierce the corporate veil: fraud and alter ego. Dolco Inv., Ltd 486 F.Supp.2d 261. In its opposition papers, Dolco withdrew its initial fraud allegation against GML. Therefore, GML's corporate veil may be pierced only under the alter ego theory of liability. The same scenario exists here, in a sense, because there was no fraud allegations made by Transquay. Thus, Transquay may be pierced only under the alter ego theory of liability.

The Second Circuit has identified a number of factors that are relevant in evaluating alter ego claims: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities. Dolco Inv., Ltd 486 F.Supp.2d 261 citing MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC, 268 F.3d 58, 63 (2d Cir.2001); Holborn, 774 F.Supp. at 844 (applying these factors in the admiralty context); Wajilam, 475 F.Supp.2d at 284-85 (same).

When not based on fraud, "veil-piercing claims are generally subject to the pleading requirements imposed by Fed.R.Civ.P.8(a), which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y.2005) citing Rolls-Royce Motor Cars. Inc. v. Schudroff, 929 F.Supp. 117, 122 (S.D.N.Y.1996)).

Suits in admiralty, however, are subject as well to Fed.R.Civ.P.Supp. Rule E(2)(a), which provides that:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Fed.R.Civ.P.Supp.Rule E(2)(a).

"This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, *a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings*." (emphasis added). Dolco Inv., Ltd 486 F.Supp.2d 261 citing P.R. Ports Auth. v. BARGE KATY-B, 427 F.3d 93, 105 (1st Cir.2005) (noting that "[o]rdinary notice pleading does not satisfy the stringencies of [the supplemental] rules").

To survive a motion to vacate the attachment Transquay was required to "allege sufficient facts to support an inference that [Stemcor] has so dominated and disregarded [Global or Kremi's] form" that Stemcor, rather than Global/Kremi, conducted Global/Kremi's business. Dolco Inv., Ltd., 486 F.Supp.2d 261 citing Wajilam, 475 F.Supp.2d at 282. Transquay fails to meet its burden of proof because it has not sufficiently alleged facts to infer that Stemcor exercised complete domination over Global/Kremi. The Second Amended Complaint alleges that Stemcor paid Kremi's alleged "freight" debt and that Mr. Oppenheimer is associated with both firms. These are insufficient allegations to infer that the ten (10) factors the Second Circuit looks to when determining whether an "alter ego" relationship exists, are present here.

In Dolco, plaintiff alleged that multiple payments were made "from time to time." Judge Sweet held that under the heightened standard of Fed.R.Civ.P.Supp.Rule E(2)(a), more was

required. The facts in Dolco pointed only to two instances where GML made payments on behalf of Moonriver. There was no allegation of intermingling of funds, nor any other factors relevant to the inquiry of piercing the corporate veil, and, accordingly, Judge Sweet held that under Fed.R.Civ.P.Supp.R. E(2)(a), Dolco's solitary allegations insufficiently alerted Defendants to the basis of its alter ego claim. Here, the allegations in Transquay's Second Amended Complaint are similarly insufficient. Transquay admits that Stemcor played no role in the charter party or fixture for the Vessel, and alleges only one payment being made by Stemcor and the fact that Mr. Oppenheimer is associated with both Stemcor and Kremi. Allegations wholly insufficient to pierce a corporate veil, if one existed.

**CONCLUSION**

For the reasons stated herein, the motion to vacate the Rule B attachment should be granted.

Dated: New York, New York
February 26, 2008

Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Defendant
STEMCOR UK LIMITED

William R. Bennett, III
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone: (646) 328-0120

**TO:** Thomas Tisdale, Esq.
Tisdale & Lennon, LLC
11 West 42nd Street, Suite 900
New York, New York 10036

Z:\Documents\All Files\D769 Transquay\Pleadings\ReplyMemo-022608.doc

# EXHIBIT A

William R. Bennett, III, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Defendant STEMCOR UK LIMITED
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone: 646-328-0120
Facsimile: 646-328-0121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRANSQUAY LIMITED PARTNERSHIP,

Plaintiff,

- against -

GLOBAL MARITIME NAVIGATION LTD., a.k.a. GLOBAL MARITIME NAVIGATION OOD, a.k.a. GLOBAL MERITAYM NEVIGEYSHAN, a.k.a. NOVAIDEYA-2004, KREMIKOVTZI A.D. a.k.a. KREMIKOVTZI CORP., a.k.a. KREMIKOVTSI, KREMIKOVTZI TRADE E.O.O.D., a.k.a. KREMIKOVTZI TRADE LTD., a.k.a. KREMIKOVTZI TREYD, FINMETALS HOLDING ALD., a.k.a. FINMETALS HOLDING EAD, a.k.a. DARU METALS LTD., GSHL BULGARIA S.A., GLOBAL STEEL HOLDINGS LTD., a.k.a. GLOBAL STEEL a.k.a. GSHL, STEEL SHIPPIONG AND FORWARDING PLC, a.k.a. STIL SHIPING END FORUARDING, a.k.a. SSF, and STEMCOR (UK) LIMITED, a.k.a. STEMCOR UK LIMITED,

Defendants.

07 CV 11130 (CM)
ECF CASE

**DECLARATION OF ANDREW GOLDSMITH**

I, ANDREW GOLDSMITH, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am in-house Counsel for Stemcor UK Limited ("Stemcor). Stemcor is a well known, long established and reputable trading company which was incorporated in England and Wales on 22 May 1951.



2. I have read the Amended Complaint and Second Amended Complaint and believe that the writ of attachment obtained by Transquay Limited Partnership ("Transquay") is based upon grossly misleading allegations.

3. Stemcor and Kremikovtki Corp. ("Kremi") are two large independent companies in the steel business (Stemcor trades steel, Kremi makes steel) and neither is an alter ego of the other. Both maintain very detailed websites that fully disclose histories, and corporate structure; see www.Stemcor.com and www.Kremikovtzi.com.

4. Stemcor is not a parent, affiliate, subsidiary, agent, partner or joint venture of Global Steel Holdings Limited ("Global") or Kremi.

5. Further, Stemcor and Global/Kremi do not share office space, bank accounts, or employees.

6. Mr. Oppenheimer is one of nine directors of Stemcor and one of five who make up Kremi's supervisory board.

7. Mr. Oppenheimer is not a director of Kremi or on its board of managers.

8. Stemcor has acted at times as a financing facility in the steel trade, including financing Kremi. All transactions between Stemcor and Global/Kremi were done at arm's length.

9. Stemcor owes no monies to Global/Kremi.

10. Stemcor is not a paying agent for Global/Kremi.

11. Stemcor has no control over Kremi, and is not in possession, custody or control of monies due to Global/Kremi.



Dated: London, United Kingdom
22 February 2008

Andrew Goldsmith

## CERTIFICATE OF SERVICE

I, WILLIAM R. BENNETT, III, an attorney duly admitted to practice in the Courts of the State of New York and in this District, hereby certify that on February 26, 2008, I personally caused a copy of the foregoing to be served on the following attorneys via ECF:

Thomas Tisdale, Esq.
Tisdale Law Offices
11 West 42nd Street, Suite 900
New York, New York 10036

William R. Bennett, III

Z\Documents\All Files\D767 Fieldston School\Pleadings\CERTIFICATE OF SERVICE-ReRule7.1Stmt-020708.doc