**ORIGINAL**

William R. Bennett, III, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Defendant STEMCOR UK LIMITED
494 Eighth Avenue, 7th Floor
New York, New York 10001
Telephone:    646-328-0120
Facsimile:    646-328-0121

**Filed Via ECF**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TRANSQUAY LIMITED PARTNERSHIP,                    07 CV 11130 (CM)
                                                  ECF CASE
                    Plaintiff,

        - against -

GLOBAL MARITIME NAVIGATION LTD., et, al.,

                    Defendants.
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION (1) TO DISMISS
THE ACTION AGAINST DEFENDANT STEMCOR UK LIMITED (2) FOR AN
AWARD COSTS PURSUANT TO 28 USC § 1927 and (3) FOR AN AWARD OF
INTEREST ON FUNDS WHICH WERE NOT RELEASED FROM
ATTACHMENT IN A TIMELY MANNER**


                        Respectfully submitted by,


                        William R. Bennett, III  (WB-1383)
                        Bennett, Giuliano, McDonnell & Perrone, LLP
                        Attorneys for STEMCOR UK LIMITED
                        494 Eighth Avenue, 7th Floor
                        New York, New York 10001

Defendant Stemcor UK Limited ("Stemcor") respectfully submits this memorandum of law in support of its motion (1) to dismiss the claim against Stemcor, (2) for costs pursuant to 28 USC § 1927, and (3) for interest on funds which were not released from attachment in a timely manner.

## The Facts

On December 10, 2007 Transquay commenced a Rule B proceeding against defendants Global and Kremikovtzi ("Kremi"). On January 23, 2008, Transquay amended its Complaint and named Stemcor as a defendant, alleging that Stemcor was an "alter ego" of both Global and Kremi. Transquay's claim arose out of a charter party entered into by and between Transquay and Global. Transquay admits that Stemcor was not, and is not, a party to, or guarantor of, said charter party. (Second Amended Complaint ¶ 12.) The only claim alleged by plaintiff against Stemcor was that Stemcor was the alter ego of one or both of its co-defendants and, thus, liable for the breach of the charter party.

Shortly, thereafter, Plaintiff attached three electronic fund transfer balances to Stemcor:

1.  $777,688.63 of a $2,500,000.00 wire stopped by Bank of New York Mellon;

2. $187,500 was a payment from Stemcor UK to Pillar Enterprises Ltd;

3. $559,547.55 stopped by American Express.

The amount attached totaled $1,524,736.18; Far in excess of what was permitted under the Court's Order permitting the attachment. On February 1, 2008, plaintiff amended its complaint for the second time.

The writ of attachment obtained by Transquay was based upon the allegation that Stemcor and Global/Kremi were related companies. As noted in Stemcor's early brief to vacate the Rule B attachment, one simply needs to review the websites of Stemcor and Kremikovtzi to

see that Stemcor and Kremi are two large independent companies and neither is an alter ego of the other; see www.Stemcor.com and www.Kremikovtzi.com. The two companies are transparent in their website, setting forth their respective histories and structures and, of the nearly 25 people who are directors or managers, only one person, Mr. Oppenheimer, was common to both companies, albeit not a common director or officer.

Transquay offered no evidence (i) that Stemcor was a parent, affiliate, subsidiary, or agent of Global or Kremi, (ii) that Stemcor and Global/Kremi shared office space, bank accounts, or employees, or (iii) that the defendants participated in a partnership or joint venture relating to the charter party.

On February 27, 2008, the Court held a hearing at which time the Court vacated the Rule B attachment against Stemcor and unequivocally held that plaintiff had not established that Stemcor was the alter ego of either co-defendant. A copy of the hearing transcript is attached hereto as Exhibit 1.

## Discussion

Under *Agua Stoli Shipping, Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006), in a Rule E(4)(f) inquiry challenging a Rule B attachment, a plaintiff has the burden to show not only that it has met the filing and service requirements of Rules B and E, but also that: (1) it has a *prima facie* admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached defendant's property was within the district; and (4) there is no statutory or maritime law bar to the attachment. *Agua Stoli*, 460 F.3d at 445. At the Rule E(4)(f) hearing, the defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed.R.Civ.P. Supp. Rule E(4)(f), advisory committee's note. In

3

its request to vacate the attachment, Stemcor challenged the allegations made in the Complaint, *i.e.*, that Stemcor was not an alter ego of either co-defendant.

In vacating the attachment on February 27, 2008 that the Court held that Plaintiff failed to establish that it has a *prima facie* admiralty claim against Stemcor. Immediately, following the hearing, Stemcor requested in writing that the Plaintiff dismiss Stemcor from the action. Despite the Court's holding that a *prima facie* claim had not been alleged against Stemcor, Plaintiff refused to dismiss the Complaint, because, according to its counsel, you "never know what further investigation will uncover." The meaning of Plaintiff's counsel's statement is clear – plaintiff recognizes that it presently has no viable claim against Stemcor, but will not dismiss the claim against Stemcor on the *hope* that something turns up in the future. Plaintiff's failure to voluntarily dismiss Stemcor from the action is clearly vexatious and frivolous. (A copy of the correspondence relating to the request for a voluntary dismissal is attached hereto as Exhibit 2.)

Lastly, on February 27, 2008 the Court vacated the attachment. Plaintiff was obligated to advise the banks that the Court vacated the attachment on that day. They did not. Plaintiffs did not request the banks to release the funds until March 6, 2008 – 8 days later. (A copy of plaintiff email to the banks dated March 6, 2008 is attached hereto as Exhibit 3.) The interest on $1,524,736.18 for 8 days at 5% is $1,670.94. Stemcor is equitably entitled to interest on its money.

## Conclusion

For the reasons set forth above, the Complaint against Stemcor must be dismissed and the costs of this motion plus interest due to the late notice to the banks to release the funds should be awarded.

Dated: New York, New York
      May 2, 2008

                        Bennett, Giuliano, McDonnell & Perrone, LLP
                        Attorneys for Defendant
                        STEMCOR UK LIMITED

                        William R. Bennett, III
                        494 Eighth Avenue, 7th Floor
                        New York, New York 10001
                        Telephone:    (646) 328-0120

**TO:**    Thomas L. Tisdale, Esq.
         Tisdale Law Offices, LLC
         11 West 42nd Street, Suite 900
         New York, New York 10036
         Telephone:    (212) 869-0067

**CERTIFICATE OF SERVICE**

    I, William R. Bennett, III, hereby certify that on this day, a true and correct copy of the

foregoing Plaintiff's Response to Defendant's Notice to Admit was served via First Class U.S.

Mail, postage pre-paid, as follows:

                Thomas L. Tisdale, Esq.
                Tisdale Law Offices, LLC
                11 West 42nd Street, Suite 900
                New York, New York 10036
                Telephone:    (212) 869-0067

                        William R. Bennett, III

# EXHIBIT 1

82rWtraC

1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    TRANSQUAY LIMITED PARTNERSHIP,
3
4                    Plaintiff,
4
5              v.                                07 CV 11130 (CM)
5
6    STEMCOR (UK) LIMITED a/k/a
6    STEMCOR UK LIMITED,
7
7                    Defendant.
8
8    ------------------------------x
9                                          New York, N.Y.
9                                          February 27, 2008
10                                          2:30 p.m.
10
11   Before:
11
12                    HON. COLLEEN MCMAHON,
12
13                                          District Judge
13
14                         APPEARANCES
14
15   THOMAS L. TISDALE
15        Attorney for Plaintiff
16
16   BENNETT GIULIANO MCDONNELL & PERRONE
17        Attorneys for Defendant
17   BY:  WILLIAM R. BENNETT
18        ERIKA ACHTZIGER
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82rWtraC

```
 1                 (Case called)
 2            MR. TISDALE:  Thomas Tisdale, for the plaintiff, your
 3   Honor.
 4            MR. BENNETT:  Good afternoon, your Honor.  My name is
 5   William Bennett, from the firm of Bennett, Giuliano, McDonnell
 6   & Perrone.  I'm here with my associate, Ms. Erika Achtziger.
 7            THE COURT:  Good afternoon.  Have a seat.  It's your
 8   motion, Mr. Bennett.
 9            MR. BENNETT:  Yes, your Honor.
10            I represent Stemcor U.K. Limited, and we're moving to
11   vacate the Rule B attachment that was granted by or obtained by
12   Transquay Limited Partnership.  At present, there is a $957,000
13   that is attached of Stemcor's money.  First off, Stemcor
14   admittedly, through the second amended complaint, has no
15   relationship to the charter party and has no connection to the
16   load or discharge ports and was not the shipper or consignee.
17   The sole claim is it is an alter ego of one or more of the two
18   defendants.  I'm fully aware of the Aquastoli case and the
19   holding therein.
20            THE COURT:  Let me see if I understand this.  I've
21   read the papers.
22            Mr. Tisdale, you allege that Stemcor is the alter ego
23   of the actual charter party, which is GMN, right?  Because it
24   has one common director with Kremikovtzi, which you allege is
25   the 100 percent owner of GMN and controls GMN and shares
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82rWtraC

```
 1    offices with GMN and has other incident incidences of alter
 2    ego-ship.  I'm inventing that term; I don't know, alter
 3    ego-ship, alter ego-dom, with GMN, (B), because Stemcor paid a
 4    date of GMN's at the request of Kremikovtzi and because Stemcor
 5    financed the underlying charter party transaction.
 6              Did I get it all right?
 7              MR. TISDALE:  I think you have some of it, your Honor.
 8    There is more in the complaint.
 9              THE COURT:  Well, what more is there?
10              MR. TISDALE:  The rest in the complaint, your Honor,
11    is the fact that Stemcor, who, if I can go back just a quick
12    second, Global Maritime or Global Navigation was the per se
13    charity.
14              THE COURT:  I know.  I don't want to go back a little
15    bit.
16              MR. TISDALE:  Okay.
17              THE COURT:  I have read everything that's in the
18    complaint, and what I have distilled it to its essence without
19    the upon information and belief, they are the alter ego and
20    they own and control, the boilerplate.  I'm not interested in
21    the boilerplate.  The boilerplate doesn't satisfy me about
22    anything.
23              What I've distilled it to is there are three things,
24    it was the financier, kind of like Citibank might be, it made a
25    debt of GMN's at the request of Kremikovtzi, which is
```

82rWtraC

1   completely consistent with your rather more fulsome allegation
2   that Kremikovtzi is the alter ego of GMN, completely consistent
3   with that, almost probative of your theory that the Bulgarian
4   company, Kremikovtzi, is the alter ego and conducts business
5   through GMN, and there is this one director.  And I know
6   there's a technicality about whether he's actually on the board
7   or not, but there is one person who has some sort of
8   affiliation with both of the companies, Kremikovtzi and
9   Stemcor.
10          Distilled to its essence, that's what it looks like to
11  me.  Let me know if there's anything else.
12          MR. TISDALE:  Yes, your Honor.  There are two other
13  facts.
14          THE COURT:  Tell me about them.
15          MR. TISDALE:  They begin in paragraph 73 --
16          THE COURT:  Tell me about them.
17          MR. TISDALE:  -- of the amended complaint.  They are
18  the fact that Stemcor, this charter party, was subject at all
19  times to Stemcor's approval.
20          THE COURT:  So what?  Why is that, if Stemcor was the
21  financing party --
22          MR. TISDALE:  Well, we don't know.
23          THE COURT:  If they were Citibanking it, why shouldn't
24  it be?
25          MR. TISDALE:  Well, because I've never known of a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

82rWtraC

```
 1    Citibank which finances many transactions, your Honor, (A), to
 2    make a payment directly, but, (B) --
 3           THE COURT:  The payment directly is easily accounted
 4    for by the fact that you allege that Kremikovtzi is the real
 5    owner and alter ego and doing business through GMN, so it might
 6    very well say, okay, well, our subsidiary, GMN, needs to have a
 7    debt paid, you go ahead and pay that and you owe me money so
 8    you go ahead and pay that.
 9           MR. TISDALE:  In answer to your Honor's question, the
10    other two factors are the fact that Stemcor maintained
11    essentially confirmation or the right of last refusal on this
12    charter party.  This charter party was subject to Stemcor's
13    final approval, which no bank, in my experience, has ever
14    exercised.  No. 2 --
15           THE COURT:  Explain that to me, because I'm not in
16    your business and never was, and I don't understand what that
17    means.
18           MR. TISDALE:  Effectively, when GMN came to us to
19    charter this vessel, they came back and said, fine, the final
20    agreement is the following:  It will carry this much cargo from
21    this port to this port under these terms, these dollars,
22    subject to Stemcor's approval.
23           Now, when we have approvals in our business, it's
24    generally the approval by the shipper of the cargo or the
25    receiver of the cargo because they have to know the physical
```

82rWtraC

1   position, that this vessel can fit under their gear, can fit in
2   their port, fits in the berth.  Okay.  Stemcor is neither the
3   physical supplier nor the receiver of this cargo.  Stemcor has
4   nothing per se to do with the cargo itself.
5           THE COURT:  Right.
6           MR. TISDALE:  But this contract is subject to
7   Stemcor's approval, and Stemcor has required that also its
8   agent, GM 5, be the agent in the port of Burgas, which is the
9   discharge port.  So effectively Stemcor is maintaining
10  contractual control over this charter party and physical
11  control over this cargo as soon as that vessel arrives in the
12  discharge port.  Those facts have never been alleged in any
13  other alter ego case that I'm aware of, your Honor, and I have
14  never seen that be the case when any other financier is
15  involved.
16          THE COURT:  But how does that establish alter ego-dom?
17          MR. TISDALE:  I think it helps to establish dominion
18  and control especially over this transaction.
19          THE COURT:  But dominion and control over a
20  transaction is not alter ego corporate status.  The standard
21  for alter ego is not that you have control over a single
22  transaction; it's that you are literally inseparable as a legal
23  matter from the other corporation in all of its business
24  dealings, not just on one transaction.  That's what alter ego
25  means.



                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

82rWtraC

```
 1              MR. TISDALE:  And I understand that, your Honor.  The
 2    problem is, and, as your Honor can appreciate, we have had zero
 3    discovery on it, and we're not entitled to it.  We have alleged
 4    facts which raise the inference of alter ego, which is the --
 5              THE COURT:  That's the problem, they don't raise the
 6    inference of alter ego.  They raise the inference of having
 7    their finger in a single transaction.  They are not like the
 8    same office, the same officers, the same board of directors,
 9    common bank accounts.
10              Your firm has come before me numerous times with facts
11    like those, and those were the facts in Wilhelmina and those
12    were the facts in Brave Book, and those are not the facts here.
13    And you're asking me to conclude, you're asking me to infer
14    corporate alter ego status from the fact that Stemcor had
15    something to do, apparently played a very big role in this
16    particular transaction, and I don't see it.  That's not an
17    inference that one can draw.  It's not the same as a record of
18    being a paying agent and having the same address.  They're not
19    even the same country.
20              MR. TISDALE:  Your Honor, if your Honor were to look
21    at the World Reach Shipping case, Judge Buchwald's case --
22              THE COURT:  I don't think she was right.
23              MR. TISDALE:  Okay.
24              THE COURT:  Okay.
25              MR. TISDALE:  But you would agree with me if her
```

82rWtraC

```
 1    holding, if this case was before Judge Buchwald --
 2            THE COURT:  I don't necessarily agree with you, but
 3    based on scanning the opinion, I don't think Judge Buchwald and
 4    I would have come to the same conclusion.
 5            MR. TISDALE:  Okay.
 6            THE COURT:  Because I do not think that it's an
 7    inference that flows logically and naturally from the fact that
 8    Stemcor financed this transaction and asserted some measure of
 9    control.  If I were financing the transaction, I would
10    certainly want my agent to be the agent in the offload port
11    because I assume that the cargo on the ship is the collateral
12    for my financing.  Isn't that usually the way it works in the
13    big business world?
14            And so, if I were the financier, I would want my agent
15    standing there making sure that somebody did not make off with
16    the cargo that was my collateral.  That is the logical and
17    natural inference that flows from your allegations that Stemcor
18    is very careful about its money, not that Stemcor is doing
19    business through GMN, owns GMN, is the alter ego of GMN.  I
20    don't see it.
21            The one interesting fact, which is the payment of the
22    debt owed to GMN, is utterly consistent with and indeed
23    probative of your allegation that GMN is controlled by, is an
24    alter ego of, and is in the pocket of Kremikovtzi, with which
25    it does happen to share an address and all those other
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82rWtraC

```
 1   allegations I find very convincing with respect to them.  But
 2   the inference that you would have me draw seems very farfetched
 3   when there is a much more obvious inference to be drawn, which
 4   is that this is a very careful financier that wants to make
 5   sure that nobody gets away with its collateral.
 6            MR. TISDALE:  Judge, I understand what you're saying.
 7   I don't know that I would necessarily agree with your Honor,
 8   but that being aside, Mr. Goldsmith, who has submitted an
 9   affidavit on behalf of Stemcor, talks about the fact that for
10   instance, Stemcor has acted as a financier in the past.
11            THE COURT:  So?
12            MR. TISDALE:  And including Kremikovtzi.  However, he
13   does not say Kremikovtzi was the financier of this cargo.  It's
14   missing.  It's clearly missing.
15            THE COURT:  I thought Stemcor was the financier.
16            MR. TISDALE:  I'm sorry.  It's saying -- Stemcor does
17   not say that it financed this transaction.
18            THE COURT:  But that's what you say because you have
19   this e-mail.
20            MR. TISDALE:  I quote only the e-mail which comes from
21   their broker.
22            THE COURT:  Right.
23            MR. TISDALE:  Comes from the Kremikovtzi broker.
24            THE COURT:  That's what you say.  Financing will be
25   done by Stemcor U.K.  You've alleged that.  He doesn't have to
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

82rWtraC

```
 1    allege that.  You've alleged it.  You've alleged it.  And
 2    financing, it no more convinces me that the financier of the
 3    transaction is the alter ego of the person who financed than if
 4    Citibank were the financier of the transaction and you asked me
 5    to believe that Citibank were the alter ego of GMN.
 6              MR. TISDALE:  But the extent to which in this, the
 7    only transaction that I have had the ability to gain evidence
 8    on, the extent to which they have exercised dominion and
 9    control in this particular contract, the fact that the money
10    emanates from --
11              THE COURT:  They haven't.  You have no proof that
12    they've exercised dominion and control over the corporation.
13    You have proof that they were very careful about protecting
14    their monetary interest in this transaction.  And, you know
15    what?  I don't think that maritime attachment rules, which, as
16    you know, are deeply offensive to me anyway, when they deal
17    with these bank accounts, because I haven't made any secret of
18    that, I don't think that they extend to anybody who has had any
19    part in the particular transaction that is your underlying
20    charter party, that all those people automatically get named as
21    alter egos and get dragged in and have their assets attached,
22    the due process clause does not extend so far.  I mean, I think
23    it's been stretched to the breaking point, and this looks to me
24    like the breaking point.
25              You've got here a party who you specifically allege
```

1    had nothing to do with the beginning and had nothing to do with
2    the end.  You specifically allege, your allegation, I don't
3    care what he said in his affidavit, is financing the
4    transaction, and takes actions that I, the relatively
5    sophisticated party -- I've been involved in a lot of
6    commercial litigation in my day -- would say were the kinds of
7    actions that a careful lender takes with respect to its
8    collateral, which the cargo no doubt was.  If your allegation
9    is correct.  And it's the financier.  And that does not give
10    rise to any inference of a corporate relationship, a corporate
11    relationship as opposed to a business relationship, let alone
12    an alter ego corporate relationship.  I just don't think you've
13    got it.
14              MR. TISDALE:  Your Honor, whether it is under an alter
15    ego relationship or a joint venture type relationship or a
16    partnership relationship, in this particular transaction --
17              THE COURT:  But you haven't alleged joint venture and
18    you haven't alleged partnership.  You've alleged financier.
19    You're relying on the e-mail that says finance.
20              MR. TISDALE:  I understand that the e-mail says
21    finance, but the e-mail also goes on to say that's why you need
22    to have our agent at the discharge port.
23              THE COURT:  Which is completely consistent with the
24    desire of the financing party to make sure that nobody steals
25    his collateral.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82rWtraC

1    MR. TISDALE:  But that is never used, nor has it ever
2  been used as an explanation as to why they would have the
3  approval over the charter in the first place.
4    THE COURT:  Because they're very careful with what
5  they do.
6    MR. TISDALE:  While I believe your Honor might be able
7  to make an inference to that effect, I think the inference also
8  goes to the fact that they are alter egos.  The same facts can
9  infer more than one conclusion, your Honor.
10    THE COURT:  I cannot infer that this is the alter ego
11  of GMN, that Stemcor is the alter ego of GMN from anything that
12  you have in this complaint.  I can't infer that it was involved
13  in this transaction.  I can infer that it was involved in
14  financing the transaction.  I can infer that it was protecting
15  its interests.  I cannot infer that there is the slightest
16  corporate relationship between Stemcor on the one hand and GMN
17  on the other, either through Kremikovtzi or independently.
18    It is not, I understand you can sometimes infer two,
19  three, four things from equal facts.  We just finished a trial
20  where you could infer two things from the particular facts.
21  Not these facts.  And certainly not of the thing you're asking
22  me to infer, that there is an intricate alter ego corporate
23  relationship between Stemcor and GMN, which is what you need in
24  order to attach Stemcor's assets, and I don't see it.
25    I just don't see it.  I know it's a low threshold, but
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

82rWtraC

```
 1    this is where I draw the line.  This is where I draw the line.
 2    I can't see that this would ever be allowed.  Want to take it
 3    to the circuit, take it to the circuit.  See if they like it.
 4           But we have here five things that you say are indicia
 5    of the fact that Stemcor, either through Kremikovtzi or
 6    directly, controls and operates through an alter ego GMN.  Just
 7    list them.
 8           The first is that Stemcor has a director who is also
 9    on some sort of advisory board, is an advisory director of this
10    company, Kremikovtzi, which is alleged to be the alter ego of
11    GMN, and if alleged, frankly, on facts that I would find
12    sufficiently convincing that if Kremikovtzi were here trying to
13    vacate an attachment, I would not vacate the attachment.  So
14    that's one fact.
15           Well, there are a lot of companies in the world in the
16    same industry that have more than one common director.  But one
17    person, even if it were really on the board of directors of
18    both corporations, one person on a board is insufficient for
19    this Court to conclude that Stemcor and Kremikovtzi are
20    operating together to control GMN, which is what you basically
21    allege.
22           The second fact that's alleged is that Stemcor paid a
23    debt of GMN's at the request of Kremikovtzi, which is the
24    alleged owner and alter ego of GMN, and so, assuming as I do,
25    that it paid the debt because it owed money to Kremikovtzi,
```

82rWtraC

```
 1    that allegation is very probative that you were correct when
 2    you allege that Kremikovtzi and GMN are alter egos of each
 3    other, but says absolutely nothing about whether Stemcor is an
 4    alter ego of GMN.
 5              The third factor is that Stemcor was financing the
 6    underlying charter party transaction.  Playing the role of
 7    financier is utterly and completely insufficient to cause me to
 8    conclude that it is the alter ego of the financed party.  No
 9    different than a bank.
10              The fourth and fifth factors, which are that Stemcor
11    had a right of final approval over the charter party before it
12    could be entered, and that it required that its agent be the
13    agent in the port of discharge are facts that admit of the
14    inference that Stemcor is protective of the money it's going to
15    lend, that it wanted to have approval over that contract before
16    it advanced the funds and it wanted to be sure that the
17    collateral for those funds, which was the cargo on the ship,
18    was appropriately offloaded and wasn't spirited away.
19              It's sensible.  If it's not the way financiers usually
20    do business, it ought to be the way financiers usually do
21    business, very protective of its rights as financier, says
22    nothing.  The inference that the two corporations are related,
23    let alone that one controls the other completely, has it in its
24    pocket, does not flow naturally or logically from those
25    allegations.  And I'm going to vacate the attachment.  So we
```

15

82rWtraC

```
1    should enter an order to that effect.
2              THE CLERK:  Yes, your Honor.
3              THE COURT:  All right.  Interesting.  I mean, these
4    things are always interesting.  Thank you.
5              (Proceedings adjourned)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT 2

## William R. Bennett

| | |
|---|---|
| **From:** | William R. Bennett [wbennett@bgmplaw.com] |
| **Sent:** | Thursday, February 28, 2008 3:42 PM |
| **To:** | 'Thomas Tisdale' |
| **Subject:** | RE: Transquay |

Then we will litigate my counterclaim, which was not part of the motion only the issue of countersecurity.

---

**From:** Thomas Tisdale [mailto:ttisdale@tisdale-law.com]
**Sent:** Thursday, February 28, 2008 3:21 PM
**To:** William R. Bennett
**Subject:** RE: Transquay

Can't do that Bill, but if you like I will ask the judge just to rule on the remainder of your motion.


*Thomas L. Tisdale*

*11 West 42nd Street, Suite 900*

*New York, NY 10036*

*(212) 354-0025*

*Fax: (212) 869-0067*

*10 Spruce Street*

*Southport, CT 06890*

*(203) 254-8474*

*Fax: (203) 254-1641*

***NOTICE***
*This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.*

    -----Original Message-----
    **From:** William R. Bennett [mailto:wbennett@bgmplaw.com]
    **Sent:** Thursday, February 28, 2008 2:49 PM
    **To:** Thomas Tisdale
    **Subject:** RE: Transquay

    Tom,

    Will write to the client re the counterclaim for attorney's fees. In the meantime, I would like to present the
    attached order to the Court.

If you will agree to discontinue the action against Stemcor with prejudice, it will make my job convincing my client to drop the counterclaim easier. We can then file a stip of discontinuance.


Very truly yours,

William R. Bennett, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
494 8th Avenue, 7th floor
New York, New York 10001
Tel. 646.328.0120
Fax 646.328.0121


www.bgmplaw.com

---

**From:** Thomas Tisdale [mailto:ttisdale@tisdale-law.com]
**Sent:** Thursday, February 28, 2008 8:43 AM
**To:** Wbennett@bgmplaw.com
**Subject:** FW: Transquay

Hi Bill,

I have further amended the order to provide for the denial of the motion for sanctions and countersecurity, and to vacate only the attachment against Stemcor UK Limited, and to allow the resumption of service of the writ on the other defendants.

Tell me if it works for you.

Thanks,

Tom

*Thomas L. Tisdale*

*11 West 42nd Street, Suite 900*

*New York, NY 10036*

*(212) 354-0025*

*Fax: (212) 869-0067*

*10 Spruce Street*

*Southport, CT 06890*

*(203) 254-8474*

*Fax: (203) 254-1641*

***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.

-----Original Message-----
**From:** William R. Bennett [mailto:wbennett@bgmplaw.com]
**Sent:** Wednesday, February 27, 2008 5:56 PM
**To:** Thomas Tisdale; Lauren C. Davies
**Subject:**

Tom,

Attached is a proposed Order. I would like to file it quickly. Can you review and let me have any comments ASAP. Thanks.

Very truly yours,

William R. Bennett, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
494 8th Avenue, 7th floor
New York, New York 10001
Tel. 646.328.0120
Fax 646.328.0121


www.bgmplaw.com

**William R. Bennett**

| | |
|---|---|
| **From:** | Thomas Tisdale [ttisdale@tisdale-law.com] |
| **Sent:** | Thursday, February 28, 2008 5:24 PM |
| **To:** | wbennett@bgmplaw.com |
| **Subject:** | RE: Transquay |

Never know what a further investigation will uncover.

Thomas L. Tisdale

11 West 42nd Street, Suite 900
New York, NY  10036
(212) 354-0025
Fax: (212) 869-0067

10 Spruce Street
Southport, CT  06890
(203) 254-8474
Fax: (203) 254-1641

***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-
product information subject to legal privilege. If you receive this email in error, please
notify the sender. Thank you.


-----Original Message-----
From: wbennett@bgmplaw.com [mailto:wbennett@bgmplaw.com]
Sent: Thursday, February 28, 2008 4:18 PM
To: Thomas Tisdale
Subject: Re: Transquay


Tom,

Considering the Court's comments re alter ego,  what basis would you keep Stemcor in?



Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Thomas Tisdale" <ttisdale@tisdale-law.com>

Date: Thu, 28 Feb 2008 16:01:58
To:"William R. Bennett" <wbennett@bgmplaw.com>
Subject: RE: Transquay


Have at it.

Thomas L. Tisdale
11 West 42nd Street, Suite 900
New York, NY  10036

1

(212) 354-0025
Fax: (212) 869-0067
10 Spruce Street
Southport, CT  06890
(203) 254-8474
Fax: (203) 254-1641
***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.
-----Original Message-----
From: William R. Bennett [mailto:wbennett@bgmplaw.com]
Sent: Thursday, February 28, 2008 3:42 PM
To: Thomas Tisdale
Subject: RE: Transquay


Then we will litigate my counterclaim, which was not part of the motion only the issue of countersecurity.




From: Thomas Tisdale [mailto:ttisdale@tisdale-law.com]
Sent: Thursday, February 28, 2008 3:21 PM
To: William R. Bennett
Subject: RE: Transquay


Can't do that Bill, but if you like I will ask the judge just to rule on the remainder of your motion.


Thomas L. Tisdale
11 West 42nd Street, Suite 900
New York, NY  10036
(212) 354-0025
Fax: (212) 869-0067
10 Spruce Street
Southport, CT  06890
(203) 254-8474
Fax: (203) 254-1641
***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.
-----Original Message-----
From: William R. Bennett [mailto:wbennett@bgmplaw.com]
Sent: Thursday, February 28, 2008 2:49 PM
To: Thomas Tisdale
Subject: RE: Transquay
Tom,

Will write to the client re the counterclaim for attorney's fees. In the meantime, I would like to present the attached order to the Court.

If you will agree to discontinue the action against Stemcor with prejudice, it will make my job convincing my client to drop the counterclaim easier. We can then file a stip of discontinuance.


Very truly yours,

William R. Bennett, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
494 8th Avenue, 7th floor
New York, New York 10001
Tel. 646.328.0120
Fax 646.328.0121


www.bgmplaw.com




From: Thomas Tisdale [mailto:ttisdale@tisdale-law.com]
Sent: Thursday, February 28, 2008 8:43 AM
To: Wbennett@bgmplaw.com
Subject: FW: Transquay


Hi Bill,


I have further amended the order to provide for the denial of the motion for sanctions and countersecurity, and to vacate only the attachment against Stemcor UK Limited, and to allow the resumption of service of the writ on the other defendants.


Tell me if it works for you.


Thanks,


Tom


Thomas L. Tisdale
11 West 42nd Street, Suite 900
New York, NY  10036
(212) 354-0025
Fax: (212) 869-0067
10 Spruce Street
Southport, CT  06890
(203) 254-8474
Fax: (203) 254-1641
***NOTICE***

This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.

-----Original Message-----
From: William R. Bennett [mailto:wbennett@bgmplaw.com]
Sent: Wednesday, February 27, 2008 5:56 PM
To: Thomas Tisdale; Lauren C. Davies
Subject:
Tom,

Attached is a proposed Order. I would like to file it quickly. Can you review and let me have any comments ASAP. Thanks.

Very truly yours,

William R. Bennett, Esq.
Bennett, Giuliano, McDonnell & Perrone, LLP
494 8th Avenue, 7th floor
New York, New York 10001
Tel. 646.328.0120
Fax 646.328.0121


www.bgmplaw.com

# EXHIBIT 3

**William R. Bennett**

| | |
|---|---|
| From: | Dawn Kubie [dkubie@tisdale-law.com] |
| Sent: | Thursday, March 06, 2008 12:53 PM |
| To: | wbennett@bgmplaw.com |
| Subject: | RELEASE OF FUDNS: Transquay Limited Partnership v. Global Maritime Navigation Ltd., et al 07 cv 11130 |
| Attachments: | 07-cv-11130-CM Transquay Limited Partnership v. Global Maritime Navigati... (5.62 KB) |

| | |
|---|---|
| Importance: | High |

**Re:   Transquay Limited Partnership v. Global Maritime Navigation Ltd., a/k/a Global Maritime Navigation, OOD, Global Meritaym Nevigeyshan a/k/a Novaideya-2004, Kremikovtzi A.D. a/k/a Kremikovtzi Corp. a/k/a Kremikovtsi, a/k/a Kremikovtzi Trade E.O.O.D. a/k/a Kremikovtzi Trade Ltd. a/k/a Kremikovtsi Treyd, Finmetals Holding A.D. a/k/a Finmetals Holding E.A.D. a/k/a Daru Metals Ltd., GSHL Bulgaria S.A., Global Steel Holdings Ltd., a/k/a Global Steel a/k/a GSHL, Steel Shipping and Forwarding PLC a/k/a Stil Shiping End Foruarding a/k/a SSF and Stemcor (UK) Ltd. a/k/a Stemcor UK Limited**
      **Docket Number: 07 Civ. 11130**
      **Our Reference Number: 07-1790**

Ladies and Gentlemen:

We represent the Plaintiff in the above-referenced action.  Please see the attached Order from the court directing that all funds in this action be released.  For your information, the following banks are holding the following funds:

Deutsche Bank: $187,500.00
Bank of New York: $777,683.63

We would appreciate if the release could be effectuated as soon as possible.  Thank you!

Sincerely,

Dawn C. Kubie
Paralegal

Tisdale Law Offices, LLC
11 West 42nd Street, Suite 900
New York, NY  10036
Tel: (212) 354-0025
Fax: (212) 869-0067

10 Spruce Street
Southport, CT  06890
Tel: (203) 254-8474
Fax: (203) 254-1641